Electronically Filed
Supreme Court
SCWC-14-0000021
24-APR-2018
08:08 AM

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

ARLEY H. NOZAWA,
Petitioner/Plaintiff-Appellant,

vs.

OPERATING ENGINEERS LOCAL UNION NO. 3,
Respondent/Defendant-Appellee,

SCWC-14-0000021

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-14-0000021; CIVIL NO. 11-1-2623-10)

APRIL 24, 2018

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY POLLACK, J.

This case involves a claim brought by an employee against her former employer for allegedly terminating her on the basis of her gender. The circuit court granted summary judgment in favor of the employer, striking a declaration submitted in opposition and also rejecting the employee's own declarations as uncorroborated, self-serving, and conclusory. We hold that Rule

56(e) of the Hawai'i Rules of Civil Procedure does not preclude an affidavit from being self-serving, nor does it require an affidavit to be corroborated by independent evidence. In addition, unlike the employee's declarations in this case, an affidavit is conclusory if it expresses a conclusion without stating the underlying facts or reaches a conclusion that is not reasonably drawn from the underlying facts.

We also hold that the circuit court abused its discretion in striking a declaration submitted by the employee that complied with the circuit court's order allowing supplemental briefing. Accordingly, in light of the admissible evidence, there was a genuine issue of material fact as to whether the employer's proffered reasons for the employee's termination were based on pretext, and thus we conclude that the circuit court erroneously granted summary judgment in favor of the employer.

## I.    BACKGROUND

Operating Engineers Local Union No. 3 (Local 3) is a labor organization with headquarters in Alameda, California. Local 3 operates a hiring or referral hall in accordance with its collective bargaining agreement with signatory contractors. Local 3 has a district office in the State of Hawai'i (district office) that is managed by the local district representative

with the assistance of an Officer-in-Charge, who is physically located in California.

On September 11, 2006, Arley Nozawa was hired as an at-will employee for the single hiring hall dispatcher position in the district office.  As a dispatcher, Nozawa was responsible for referring union members to employers in accordance with Local 3's Job Placement Regulations (JPR).  In July 2010, Dan Reding became the Officer-in-Charge of the district office, responsible for the hiring and firing decisions for Local 3 with the approval of the business manager, Russell Burns.

In January 2011, Pane Meatoga was appointed as the district representative.  Meatoga expressed a desire to bring in his own secretary and organizer.  At the time, the district office's sole organizer was Donald Gentzler, who also performed the role of dispatcher when Nozawa was absent.  Two days after Meatoga's effective start date, on February 3, 2011, Nozawa received a termination letter dated January 27, 2011.  The termination letter read in pertinent part as follows: "I regret to inform you that due to a reorganization and restructuring of the Hawaii district office operations, your employment with Operating Engineers Local Union No. 3 will be terminated as of February 3, 2011."  Gentzler replaced Nozawa as dispatcher effective February 4, 2011, and remained in that position until July 31, 2012--when he was reassigned to the organizer position.

## A. Circuit Court

On October 31, 2011, after exhausting her administrative remedies, Nozawa filed a complaint against Local 3 in the Circuit Court of the First Circuit (circuit court), alleging inter alia that Local 3 violated Hawaii Revised Statutes (HRS) § 378-2 by terminating her on the basis of her gender.[1] The complaint asserted that Nozawa was suddenly and without cause terminated from her position as dispatcher by Local 3 and immediately replaced with a male dispatcher who received a pay raise and an increase in work hours, despite work hours having been previously reduced for all dispatchers. In addition, the complaint contended that at the time of her termination, Nozawa did not have any performance problems and was fully capable of performing her dispatcher duties in an exemplary manner. Local 3 denied the allegations of gender discrimination in its answer to Nozawa's complaint.

On February 12, 2013, Local 3 filed a motion for summary judgment, which included declarations from Toni Mendes and Reding. Mendes identified herself as Local 3's office systems and job placement center coordinator and stated that her workplace was in Sacramento, California. Mendes declared that

---

[1] The complaint set forth four counts, three of which Nozawa voluntarily dismissed. The dismissed counts are not further addressed.

4

she began closely monitoring the technical aspects of Nozawa and other dispatchers' work performance in late 2008. Attached to Mendes' declaration was a JPR provision providing that, subject to some exceptions, a dispatched employee who does not work at least forty-eight hours straight is entitled to return to the employee's former position on the out-of-work list.[2] Mendes stated that Nozawa committed a serious dispatching error in January 2010 when she did not properly restore an employee, Richard Conradt, to his former place on the list in accordance with the JPR.

In his declaration, Reding stated that Conradt subsequently filed an unfair labor practice claim against Local 3, which it settled by paying Conradt $19,866.40 in lost wages and fringe benefits and $5,500 in legal fees. Reding maintained that no other dispatcher had ever committed an error of this nature. Reding further stated that he sought and received Burns' approval to terminate Nozawa as a result of the error, but Eugene Soquena, the district representative at the time, requested that Nozawa be given a last chance to improve. Hence, Reding continued, Nozawa was given a Final Written Warning

---

[2] The out-of-work list establishes the priority in which out-of-work union members are dispatched to available jobs.

5

(Warning letter), dated April 19, 2010.  The Warning letter read as follows:

> It has come to our attention that you continue to make numerous mistakes in the discharge of your duties as Dispatcher.  Among others, key areas of deficiencies is your lack of a clear grasp and understanding of the Hawaii Job Placement Regulations (JPR).  Consequently, this has caused you to dispatch members improperly.  Additionally, there is an inordinate amount of registration overrides caused by errors.  Some of these overrides used incorrect dates which allowed our members and others to be dispatched incorrectly, seriously exposing our local to potential legal liability.  Recently, this transgression manifested itself in the dispatch of member Richard Conrad, Jr.  We are still assessing the potential damage this error may ultimately cause.
>
> This will serve notice to you that any further mistakes on your behalf in carrying out your duties, will result in the immediate termination of your employment with OE3.  Additionally, if in the course of our investigation in the processing of Mr. Conrad's registration and dispatch, we find additional errors, you will be subject to immediate termination of employment.

Mendes also stated in her declaration that, even prior to the error involving Conradt and after the Warning letter, Nozawa made a number of recurring errors related to registration overrides and the placement of employees on the out-of-work list.  According to Mendes, from late 2008 until Nozawa's termination, Mendes engaged in an effort to train Nozawa but she continuously failed to fully comprehend the dispatching rules and procedures.  As examples, Mendes attached email correspondences between herself and Nozawa from June to August 2010 in which they discussed the timing of monthly registration lists, an override adjustment for an employee, and the dues for retirees.

Reding declared that his suggestion to Meatoga to replace Nozawa with Gentzler was based on Gentzler's impending displacement as organizer and the reports of Mendes that Nozawa continued to make dispatching errors following the Warning letter.  Gentzler was hired in September 2007 as an organizer, Reding stated, and he had extensive experience with the JPR and the collective bargaining agreement and had not received any written warnings for deficient work performance.  Reding also explained that the increase in work hours for Gentzler was based on a preexisting plan to return dispatchers to the forty-five-hour week, as well as the lack of a backup dispatcher.[3]

Based on these declarations, Local 3 argued that in reorganizing the district office, it decided to terminate Nozawa in order to retain Gentzler, an experienced dispatcher with no history of work performance problems and a clean disciplinary record.  Local 3 thus maintained that it had articulated legitimate, nondiscriminatory reasons for Nozawa's termination.

In opposition, Nozawa averred in her declaration that she was falsely accused of making an error regarding the placement of Conradt and that she had followed proper protocol. Nozawa stated that her supervisor at the time, Soquena, never

---

[3]    In her declaration, Mendes explained that the work hours for dispatchers were decreased in late December 2010 due to the depressed economy.

informed her during her employment of any work performance problems that he had perceived. Soquena stopped the impending termination because she had not made a mistake, Nozawa explained, and she signed the Warning letter but disputed that she had made a mistake.

Additionally, Nozawa stated in her declaration that she had always received excellent employment evaluations, she did not have work performance problems when she was terminated, and she was fully capable of performing her job at the time of termination. Pointing to the termination letter she received, Nozawa attested that her termination was the result of an alleged reorganization and restructuring, not disciplinary action, and that she was terminated without cause. Nozawa also declared that Gentzler had little experience as a dispatcher and that when he replaced her, his work hours increased at an increased pay.

Nozawa argued in her opposition that she received no further write-ups or warnings following the Warning letter and that, based on the record, there were issues of material fact

related to her termination that required denial of Local 3's motion.[4]

Local 3 replied, attaching a supplemental declaration from Mendes stating that she supervised the technical aspects of Nozawa's work performance and it was her honest assessment that Nozawa had performance issues. Mendes disputed that Nozawa had always received excellent employment evaluations, that she did not have performance problems and was fully capable of performing her job at the time of termination, and that she was falsely accused of the error involving Conradt.

Local 3 argued in its reply that Nozawa provided "uncorroborated, self-serving, conclusory statements" that did not satisfy the requirements of Hawai'i Rules of Civil Procedure (HRCP) Rule 56(e) and were insufficient to defeat summary judgment. Local 3 also contended that Nozawa was not competent to testify to matters related to her own work performance and qualifications.

Additionally, Local 3 submitted that Nozawa's termination was based on its honest belief that reorganization was the most practical method of accommodating Meatoga's desire

---

[4]    Nozawa later argued that the email exchanges between herself and Mendes that occurred after she received the Warning letter did not show that she had made mistakes.

to hire a new organizer.  Local 3 added that there was no evidence anyone other than Nozawa committed the error involving Conradt and that, in any event, Nozawa was not terminated because of this error.  Local 3 also asserted that the fact that Nozawa did not receive a further write-up after the Warning letter did not establish pretext because Nozawa was an at-will employee who could be terminated at any time, "for any reason, fair or unfair, with or without notice or warning."

After the initial hearing on the motion for summary judgment,[5] Local 3 moved for leave to submit supplemental briefing, contending that it was necessary for the court to receive documents pertinent to certain declarations made by Nozawa.  The circuit court granted the motion and issued an order, stating that Local 3 "has leave to file a Supplemental Memorandum in Support of its Motion" and Nozawa "may file a Supplemental Memorandum in Opposition addressing Defendant's Supplemental Memorandum."

Local 3's supplemental reply, which included exhibits and a declaration from Mendes,[6] argued that Nozawa had committed

---

[5]     The Honorable Karen T. Nakasone presided over the summary judgment proceedings.

[6]     Mendes averred that, based on the computer printouts attached to her declaration, she had an honest and sincere belief that Nozawa did in fact enter incorrect registration dates for Conradt.

placement errors involving Conradt, that Nozawa made subsequent errors, and that Reding recommended that Nozawa be terminated as part of a staffing reorganization.  Local 3 maintained that, based on these facts, there was no evidence of dishonesty or pretext and that an employer's belief that an employee committed misconduct is a legitimate, nondiscriminatory reason for termination.

Nozawa filed a supplemental opposition supported by her declaration and a declaration from Local 3's former treasurer, William Mahoe (Mahoe Declaration).  In his declaration, Mahoe stated that he was appointed treasurer of Local 3 in January 2009.  He averred that, while serving as treasurer, he attended union meetings in 2009 and 2010 at which Burns, Reding, and other Local 3 officers were present.  Mahoe stated that at these meetings the officers of Local 3 discussed replacing women dispatchers with men, to which he objected.  Mahoe also stated that he wanted Nozawa to remain in her position as dispatcher; he felt that she was doing a good job.  Mahoe indicated that he resigned from Local 3 on January 23, 2011, and that he understood Nozawa was replaced by a male dispatcher shortly thereafter.

In her declaration, Nozawa explained that Conradt constantly worked jobs of short duration and that, in accordance with the JPR, she placed him at the bottom of the out-of-work

11

list until he provided the necessary paperwork showing that he was laid off prior to working forty-eight hours straight. When Conradt provided the required documentation, Nozawa averred, she would perform an override to return him to his former position on the list after obtaining the requisite authorization code from Mendes. Nozawa argued in her supplemental opposition that the alleged mistakes asserted by Local 3 were merely a pretext for gender discrimination.

During Nozawa's argument at a second hearing on the motion for summary judgment, the circuit court raised sua sponte the propriety of the submission of the Mahoe Declaration. The court stated that it seemed to go beyond the scope of the supplemental briefing, which the court believed "was just for the purposes of the false accusation." Nozawa explained that she was not able to obtain the Mahoe Declaration when she initially filed her opposition and that, in any event, the Mahoe Declaration was properly before the court as she should be permitted to respond to Local 3's supplemental reply.

Local 3 asserted that Nozawa's supplemental opposition raised entirely new theories, the theories did not relate to her claim that she was falsely accused of the error involving Conradt, and the supplemental opposition exceeded the scope of the court's order. The court concurred in Local 3's assessment but upon reviewing the order acknowledged that the terms of the

12

order had not limited the supplemental briefing to the "false accusation."  The circuit court nonetheless indicated that its recollection was that Local 3 specifically sought to supplement its briefing as to Nozawa's claim that she was falsely accused of the error involving Conradt.  Over Nozawa's objection, the court struck the Mahoe Declaration as beyond the scope of the limited supplemental briefing and supplemental response.[7]

The circuit court then considered Nozawa's declarations and found that Nozawa's statement that she was falsely accused of the error involving Conradt was unsubstantiated.  The court also determined that the evidence adduced by Nozawa consisted of "uncorroborated, self-serving, conclusory statements" that were not sufficient to establish genuine issues of material fact under the summary judgment standard.[8]  Ruling that the declarations lacked the competent evidence required under HRCP Rule 56 to show pretext, the court granted Local 3's motion for summary judgment.

The circuit court entered its final judgment on October 18, 2013.  Nozawa filed a motion for reconsideration, in

---

[7]    The court also denied Nozawa's request to supplement her briefing and to allow Local 3 to respond.

[8]    The court cited Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054 (9th Cir. 2002), and Hansen v. United States, 7 F.3d 137 (9th Cir. 1993).

13

which she argued that the Mahoe Declaration responded to the supplemental reply and did not go beyond the scope of the supplemental briefing.  The court denied the motion.  Nozawa timely filed a notice of appeal to the Intermediate Court of Appeals (ICA) from the circuit court's final judgment and the order denying the motion for reconsideration.

### B. ICA Proceedings

In her appeal, Nozawa contended that the circuit court (1) abused its discretion when it struck the Mahoe Declaration[9] and (2) erred in granting Local 3's motion for summary judgment.

In a memorandum opinion, the ICA affirmed the circuit court's final judgment.[10]  First, the ICA found that the supplemental briefing was limited to Nozawa's claim that she was falsely accused in the Conradt incident, that the Mahoe Declaration exceeded this scope, and that the circuit court accordingly did not abuse its discretion in striking the Mahoe Declaration.

Second, the ICA determined that Local 3 articulated legitimate, nondiscriminatory reasons for terminating Nozawa and

_____

[9]     Nozawa alternatively contended that the circuit court abused its discretion in denying her request to supplement her briefing.

[10]     The ICA's memorandum opinion can be found at Nozawa v. Operating Engineers Local Union No. 3, NO. CAAP-14-0000021, 2017 WL 2670800 (Haw. App. June 21, 2017).

14

that the burden shifted to Nozawa to demonstrate that Local 3's proffered reasons were pretextual. The ICA found that the only proper evidence that Nozawa provided to support her gender discrimination claim were her declarations, which included the averment that she always received excellent employment evaluations. The ICA noted that, while Nozawa stated that she signed the Warning letter but disputed that she had made a mistake, Nozawa did not provide documentation or further details. The ICA further found that Nozawa did not contest that a staff reorganization occurred after Meatoga's appointment and Nozawa did not provide evidence that she was more qualified for the dispatcher position than Gentzler. Thus, the ICA concluded that Nozawa failed to show that there was a genuine issue of material fact as to whether Local 3's proffered reasons for her termination were pretextual.

## II. STANDARD OF REVIEW

This court reviews an award of summary judgment de novo under the same standard applied by the lower court. Adams v. CDM Media USA, Inc., 135 Hawai'i 1, 12, 346 P.3d 70, 81 (2015) (citing Shoppe v. Gucci Am., Inc., 94 Hawai'i 368, 376, 14 P.3d 1049, 1057 (2000)).

### III.     DISCUSSION

On certiorari, Nozawa presents two questions for review: (1) whether the ICA erred in failing to view the evidence in the light most favorable to her as the non-moving party in the summary judgment proceeding and (2) whether the ICA erred in failing to consider her declarations and the declaration of Mahoe.

In response, Local 3 contends that the ICA considered Nozawa's declarations, neither of which satisfied the requirements of HRCP Rule 56(e); the circuit court properly struck the Mahoe Declaration, which exceeded the scope of the supplemental briefing; and the ICA viewed the evidence in the light most favorable to Nozawa, who failed to dispute the staffing reorganization, Gentzler's work performance, and his knowledge about the collective bargaining agreement and the JPR.

### A.  The Circuit Court And The ICA Erred In Not According The Proper Weight To Nozawa's Declarations

Pursuant to HRCP Rule 56(e) (2000), affidavits supporting or opposing a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Thus, affidavits that state ultimate or conclusory facts cannot be used in support of or in opposition to a motion for summary

16

judgment.  GECC Fin. Corp. v. Jaffarian, 79 Hawai'i 516, 525, 904 P.2d 530, 539 (App. 1995).

In this case, Nozawa's declarations included statements that related to her general work performance as a dispatcher and the specific incident involving Conradt that resulted in the Warning letter.  The circuit court gave no weight to either category of Nozawa's statements, while the ICA gave no weight to the latter.

### 1. Nozawa's general work performance

We turn first to Nozawa's statements related to her general work performance as a dispatcher.  In her first declaration, Nozawa stated that she always received excellent employment evaluations and was not informed by Soquena of any work performance concerns.  Nozawa also stated that she did not have work performance problems and was fully capable of performing her job at the time she was terminated. Additionally, Nozawa pointed to the termination letter she received, which informed her that she was terminated not because of any disciplinary action but based on reasons related to reorganization and restructuring.

The circuit court rejected Nozawa's declarations, finding that Nozawa's statements did not satisfy HRCP Rule 56(e) because they were uncorroborated, self-serving, and conclusory.

17

The circuit court's ruling indicates that it misconstrued the standard for affidavits or declarations supporting or opposing a summary judgment motion. HRCP Rule 56(e) provides that affidavits shall set forth facts based on personal knowledge. Thus, an affidavit by its nature includes an affiant's own perception of the matter. See Commentary to Hawaii Rules of Evidence (HRE) Rule 602 (1993) ("'Personal knowledge,' for purposes of [HRE Rule 602], means that the witness perceived the event about which [the witness] testifies and that [the witness] has a present recollection of that perception.").

The circuit court's rejection of Nozawa's statements as "self-serving" is thus misplaced. HRCP Rule 56(e) does not preclude an affidavit from being self-serving. Indeed, as the Eleventh Circuit recently observed, "most affidavits submitted [in response to a summary judgment motion] are self-serving." United States v. Stein, 881 F.3d 853, 857 (11th Cir. 2018) (alteration in original) (quoting Payne v. Pauley, 337 F.3d 767, 772 (7th Cir. 2003)) ("[N]othing in Rule 56 (or, for that matter, in the Federal Rules of Civil Procedure) prohibits an affidavit from being self-serving.").[11] Thus, a party's self-

---

[11] Where a federal rule of procedure is substantially similar to a Hawai'i rule of procedure, this court may look to federal caselaw for guidance. Stallard v. Consol. Maui, Inc., 103 Hawai'i 468, 475, 83 P.3d 731, 738 (2004).

serving statements that otherwise comply with HRCP Rule 56(e) can be utilized to defeat summary judgment.  Id.; Price v. Time, Inc., 416 F.3d 1327, 1345, modified on other grounds on denial of reh'g, 425 F.3d 1292 (11th Cir. 2005) ("Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving.").

Additionally, HRCP Rule 56(e) does not require a statement in an affidavit to be corroborated in order to be a qualifying affidavit under the rule.  HRCP Rule 56(e); Stein, 881 F.3d at 858 ("Nor does Rule 56 require that an otherwise admissible affidavit be corroborated by independent evidence."). As the Stein court observed, "If corroboration is needed, then that requirement must come from a source other than Rule 56." Stein, 881 F.3d at 858; Strickland v. Norfolk S. Ry. Co., 692 F.3d 1151, 1160 (11th Cir. 2012) ("[E]ven in the absence of collaborative evidence, a plaintiff's own testimony may be sufficient to withstand summary judgment." (citation omitted)). Indeed, a requirement that an affidavit be corroborated would establish a higher standard for admissibility than that required for the introduction of evidence at trial.  Nor has this court ever held that an uncorroborated statement by a party to the litigation is insufficient to raise a dispute as to a material fact.  See, e.g., Lales v. Wholesale Motors Co., 133 Hawai'i 332,

19

357-58, 328 P.3d 341, 366-67 (2014) (holding that the plaintiff's declaration presented sufficient evidence to raise an issue of material fact as to whether his termination was based on pretext); Acoba v. Gen. Tire, Inc., 92 Hawai'i 1, 14-15, 986 P.2d 288, 301-02 (1999) (concluding that an affidavit--submitted in opposition--alone was sufficient to defeat the defendant's motion for summary judgment).

Finally, the circuit court misapprehended what constitutes a conclusory statement in the context of HRCP Rule 56(e). "Conclusory" is defined as "[e]xpressing a factual inference without stating the underlying facts on which the inference is based." Conclusory, Black's Law Dictionary (10th ed. 2014). An "inference" in turn is "a conclusion reached by considering other facts and deducing a logical consequence from them." Inference, Black's Law Dictionary (10th ed. 2014); see also 23B Am. Jur. Pleading and Practice Forms § 244 (2017) ("An inference is a deduction of fact that the jury may logically and reasonably draw from another fact or facts found or otherwise established in the trial."). Thus, when an assertion in an affidavit expresses an inference without setting forth the underlying facts on which the conclusion is based or states a conclusion that is not reasonably drawn from the underlying facts, the assertion is considered conclusory and cannot be

20

utilized in support of or against a motion for summary judgment. See Conclusory, Inference; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990) (noting that the object of the requirement in Federal Rules of Civil Procedure Rule 56(e) that affidavits "set forth specific facts showing that there is a genuine issue for trial" is not to make permissible conclusory allegations in an affidavit). On the other hand, an inference within an affidavit that is based on stated facts from which the conclusion may reasonably be drawn is not conclusory and may be used to support or oppose a motion for summary judgment.

To be sure, the underlying facts and the inference must be based on personal knowledge and otherwise admissible in evidence. HRCP Rule 56(e). Inferences that amount to opinions thus must satisfy relevant evidentiary rules that would apply were the evidence offered through witness testimony. Lay opinions must be both "rationally based on the perception of the" affiant and "helpful to a clear understanding of the [affiant's] testimony or the determination of a fact in issue." HRE Rule 701 (1993). An affiant generally may "give an opinion on an ultimate fact involved in the case" when such an opinion is properly supported by facts personally perceived.[12] See

_____

[12] The Commentary to HRE Rule 704 clarifies that courts are empowered to exclude opinions on "ultimate facts" that are not helpful to the

(continued . . .)

21

Samson v. Nahulu, 136 Hawai'i 415, 429, 363 P.3d 263, 277 (2015) (citing HRE Rule 704); HRE Rule 701.  But the affiant "may not give opinions on questions of law as that would amount to legal conclusions."[13]  Nahulu, 136 Hawai'i at 429, 363 P.3d at 277 (citing HRE Rule 704).  Indeed, any legal conclusions drawn by the affiant are not admissible evidence, regardless of whether they are couched as the affiant's opinion.  Pulawa v. GTE Hawaiian Tel, 112 Hawai'i 3, 15, 143 P.3d 1205, 1217 (2006).

The statements in Nozawa's declarations that she always received excellent employment evaluations and that she was not informed by Soquena of any work performance issues were specific, factual information personally known to Nozawa.  As additional support of her assessment regarding her work performance, Nozawa highlighted that the termination letter she

___

(. . . continued)

trier of fact under HRE Rules 701 and 702, as well as those that are "prejudicial, confusing, misleading, unnecessarily cumulative, or lacking in trustworthiness" under HRE Rule 403.  Commentary to HRE Rule 704 (1993).  Opinions that "merely tell the jury what result to reach" are inadmissible under these provisions.  Id.; accord State v. Pinero, 70 Haw. 509, 520-21, 778 P.2d 704, 712 (1989) (excluding expert testimony that death was homicide and not accident in murder trial as beyond the scope of admissible opinion).

[13]     The Commentary to HRE Rule 704 illustrates the distinction between an opinion on an ultimate fact and a statement of law.  "[T]he question, 'Did T have the capacity to make a will?' would be excluded, while the question, 'Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?' would be allowed."  Commentary to HRE Rule 704.

received stated her discharge was the result of reorganization-- not disciplinary action. In light of these statements, Nozawa had a factual basis to reasonably infer that she did not have work performance problems and was fully capable of performing her duties at the time of termination.[14] To the extent these conclusions amounted to opinions, they were rationally based on Nozawa's personal perceptions and may have been helpful to a clear understanding of her declaration and a fact at issue, i.e., whether Local 3's claim that Nozawa was terminated for deficient performance was a pretext for discrimination.[15] Further, the statements did not amount to legal conclusions because they were essentially factual in nature and did not attempt to apply a legal standard. Nozawa did not simply state, for example, that her termination violated HRS § 378-2 or that it was motivated by discriminatory intent, which would not have been admissible evidence that could be considered for purposes of summary judgment.

---

[14] In the absence of a factual basis, neither an employee nor an employer's subjective assessment of the employee's work performance is admissible evidence upon which summary judgment can be based. See HRE Rule 701; HRCP Rule 56(e).

[15] As stated, the trial court had discretion in accordance with HRE Rules 403 and 701 to exclude statements of Nozawa's opinion. There is no indication the court based its ruling on these grounds.

Because Nozawa did not express a conclusion without stating the underlying facts or reach a conclusion that was not reasonably drawn from the underlying facts, see Conclusory, Inference, these statements were not conclusory and were in compliance with HRCP Rule 56(e).  And to the extent that some of Nozawa's statements were opinions, they were not clearly inadmissible under governing evidentiary rules.

Accordingly, the circuit court erred in finding that Nozawa's declarations were not competent evidence under HRCP Rule 56 because they were self-serving, conclusory, and uncorroborated.[16]

### 2. Nozawa's alleged error involving Conradt

Nozawa's statements in her declarations also related to the alleged error involving Conradt.  The ICA found that Nozawa provided no documentation or further details regarding

---

[16]    In ruling upon Nozawa's declarations, the circuit court cited Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054 (9th Cir. 2002), for the proposition that uncorroborated, conclusory, or self-serving statements cannot defeat summary judgment.  However, unlike the plaintiff in Villiarimo, who the Court of Appeals found had made assertions that were not supported by the evidence in the record, 281 F.3d at 1063-64, Nozawa submitted statements in compliance with the admissibility requirements of HRCP Rule 56(e).

The circuit court also relied on Hansen v. United States, 7 F.3d 137 (9th Cir. 1993), to support its finding that Nozawa's declarations were insufficient to defeat summary judgment.  In Hansen, the Court of Appeals stated that a nonmoving party that relies only on its own affidavits "cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact."  7 F.3d at 138.  As stated, Nozawa's declarations contained assertions that were based on her personal knowledge and that would be admissible in evidence.

her statement that she disputed the contents of the Warning letter. As stated above, there is no requirement that a declaration in opposition to a summary judgment motion be corroborated by independent evidence. See Stein, 881 F.3d at 858. Nozawa was thus not required to provide additional documentation regarding her statement. The evidence in the record also contradicts the ICA's conclusion that Nozawa failed to provide further details regarding the event.

The Warning letter specified that Nozawa had entered incorrect dates resulting in members, and specifically Conradt, being dispatched incorrectly. Nozawa averred that she had been falsely accused of making a mistake as to Conradt, stating that she had followed proper protocol. Nozawa explained that she performed override corrections for Conradt in accordance with the JPR and with Mendes' approval. Nozawa's declaration indicated that she dealt directly with Conradt when the alleged errors occurred, and thus she would have had personal knowledge of Conradt's paperwork. Further, Nozawa stated that when she was to be terminated for the alleged error involving Conradt, Soquena intervened and stopped the termination. Thus, Nozawa did provide additional details disputing the Warning letter.

Accordingly, the circuit court and the ICA erred in not properly considering Nozawa's declarations as to the alleged error involving Conradt.

25

**B.  The Circuit Court Abused Its Discretion In Striking The Mahoe Declaration**

During the continued summary judgment hearing, the circuit court stated that the Mahoe Declaration seemed to exceed the limited scope of the supplemental briefing order, which the court believed "was just for the purposes of the false accusation."  After reviewing the order, which stated that Nozawa "may file a Supplemental Memorandum in Opposition addressing Defendant's Supplemental Memorandum," the court acknowledged that the order did not in fact contain such a limitation.  The court nonetheless struck the Mahoe Declaration based on its recollection of the purpose of the supplemental briefing.

The order granting the motion for leave expressly permitted Nozawa to file a supplemental memorandum addressing Local 3's supplemental reply.  Local 3's supplemental reply argued that there was no disputed fact as to Nozawa's deficient work performance, Nozawa's alleged error involving Conradt, and the reorganization that occurred.  Additionally, Local 3 contended that there was no evidence of dishonesty as to its reasons for terminating Nozawa and no evidence of pretext, and thus it was entitled to summary judgment.

Nozawa, in response, submitted a supplemental opposition with her own declaration and a declaration from

26

Mahoe. The Mahoe Declaration provided evidence that indicated Nozawa may have been terminated based on her gender and not due to inadequate work performance or reorganization as Local 3 maintained. Mahoe averred that, while treasurer, he attended meetings in 2009 and 2010 at which Local 3 officers discussed replacing women dispatchers with men. The Mahoe Declaration named Burns and Reding as two of the officers present during those meetings, both of whom were involved in the decision to terminate Nozawa. Reding was also involved in the decision to discipline Nozawa over the Conradt incident. Mahoe additionally declared that he believed Nozawa was doing a good job and that he wanted her to remain in her position as dispatcher.

The Mahoe Declaration therefore addressed the arguments raised in Local 3's supplemental reply regarding the quality of Nozawa's work, the alleged error involving Conradt, and the presence of dishonesty or pretext in the decision to terminate Nozawa. The declaration was accordingly within the scope of the circuit court's order granting leave to submit supplemental briefing.

An abuse of discretion occurs when a court "clearly exceed[s] the bounds of reason or disregard[s] rules or principles of law or practice to the substantial detriment of a party litigant." Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 74 Haw. 85, 114, 839 P.2d 10, 26 (1992) (citing State v. Akina,

27

73 Haw. 75, 78, 828 P.2d 269, 271 (1992)).  Here, the circuit court disregarded principles of law or practice by striking the Mahoe Declaration, which was in compliance with the court's order.  Thus, the circuit court abused its discretion in not considering the Mahoe Declaration, substantially prejudicing Nozawa's ability to controvert Local 3's supplemental reply.

## C. There Is A Genuine Issue Of Material Fact As To Whether Local 3's Reasons For Terminating Nozawa Were Pretextual

"[S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Adams v. CDM Media USA, Inc., 135 Hawai'i 1, 12, 346 P.3d 70, 81 (2015) (alteration in original) (quoting Shoppe v. Gucci Am., Inc., 94 Hawai'i 368, 376, 14 P.3d 1049, 1057 (2000)).  "A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties."  Id. (quoting Shoppe, 94 Hawai'i at 376, 14 P.3d at 1057).

The burden is on the moving party to establish that summary judgment is proper.  French v. Haw. Pizza Hut, Inc., 105 Hawai'i 462, 470, 99 P.3d 1046, 1054 (2004).  "This burden always remains with the moving party and requires the moving party to

convince the court that no genuine issue of material fact exists and that the moving part[y] is entitled to summary judgment as a matter of law." Id. (citation omitted).

"[O]nce a summary judgment movant has satisfied its initial burden of producing support for its claim that there is no genuine issue of material fact, the party opposing summary judgment must 'demonstrate specific facts, as opposed to general allegations, that present a genuine issue worthy of trial.'" Lales v. Wholesale Motors Co., 133 Hawai'i 332, 359, 328 P.3d 341, 368 (2014) (quoting French, 105 Hawai'i at 470, 99 P.3d at 1054). "[T]he evidence must be viewed in the light most favorable to the non-moving party." Adams, 135 Hawai'i at 12, 346 P.3d at 81 (alteration in original) (quoting Shoppe, 94 Hawai'i at 376, 14 P.3d at 1057).

HRS § 378-2(a)(1)(A) (1993 and Supp. 2010) provides as follows: "It shall be an unlawful discriminatory practice: (1) Because of . . . sex . . . For any employer to . . . discharge from employment . . . any individual." Thus, HRS § 378-2 prohibits an employer from discharging a person because of that person's gender.[17] Discrimination may be proven by

---

[17] Employers of at-will employees are subject to the provisions of HRS § 378-2. HRS chapter 378 defines "employer" as "any person, including the State or any of its political subdivisions and any agent of such person, having one or more employees, but shall not include the United States." HRS

(continued . . .)

circumstantial evidence. Shoppe, 94 Hawai'i at 378, 14 P.3d at 1059. When analyzing a claim of discrimination that relies on circumstantial evidence, we engage in a three-step analysis. Adams, 135 Hawai'i at 13, 346 P.3d at 82 (citing Shoppe, 94 Hawai'i at 378-79, 14 P.3d at 1059-60).

> First, the plaintiff must establish a prima facie case of discrimination by demonstrating, by a preponderance of evidence, the following four elements: (1) that plaintiff is a member of a protected class; (2) that plaintiff is qualified for the position . . . from which plaintiff has been discharged; (3) that plaintiff has suffered some adverse employment action, such as a discharge; and (4) that the position still exists.

Shoppe, 94 Hawai'i at 378, 14 P.3d at 1059 (citation omitted).

Second, "[o]nce the plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action." Adams, 135 Hawai'i at 13, 346 P.3d at 82 (citing Shoppe, 94 Hawai'i at 378, 14 P.3d at 1059). "The employer's explanation must be in the form of admissible evidence and must clearly set forth reasons that, if believed by the trier of fact, would support a finding that

---

(. . . continued)

§ 378-1 (1993). "In enacting the employment discrimination law, the legislature intended that all employers, regardless of size, be subjected to its provisions." Sam Teague, Ltd. v. Hawai'i Civil Rights Comm'n, 89 Hawai'i 269, 281, 971 P.2d 1104, 1116 (1999) (referencing definition of "employer" in HRS § 378-1 (1993)).

unlawful discrimination was not the cause of the challenged employment action." Id. (citing Shoppe, 94 Hawai'i at 378, 14 P.3d at 1059).[18]

Third, "if the employer rebuts the prima facie case, the burden reverts to the plaintiff to demonstrate that the defendant's proffered reasons were 'pretextual.'" Id. at 14, 346 P.3d at 83 (citing Shoppe, 94 Hawai'i at 379, 14 P.3d at 1060).

Summary judgment is improper if there is a genuine issue as to whether a defendant's reasons for terminating the plaintiff are a pretext for discrimination. See Simmons v. Aqua Hotels & Resorts, Inc., 130 Hawai'i 325, 331-32, 310 P.3d 1026, 1032-33 (App. 2013) (finding that a fact issue existed as to whether the defendant's reasons were pretextual); see also Shoppe, 94 Hawai'i at 382, 14 P.3d at 1063 ("Plaintiff has not alerted this court to any other evidence that would give rise to a genuine issue of material fact" as to whether the defendant's reason for taking adverse employment action against the plaintiff was pretextual).

---

[18] The ICA's decision and the parties' arguments on certiorari predominantly focus on pretext. In light of our resolution of this issue, we do not consider whether there was a genuine issue of material fact as to whether Local 3 articulated a legitimate, nondiscriminatory reason for its adverse employment action against Nozawa.

31

In support of its motion for summary judgment, Local 3 submitted declarations stating that it terminated Nozawa as part of a staffing reorganization to retain Gentzler, who unlike Nozawa had not committed a serious dispatching error and did not have work performance problems. Nozawa responded with evidence indicating that her termination was not based on the reasons provided by Local 3 but, rather, because of her gender. Nozawa declared that she did not have work performance problems and was fully capable of performing her job at the time of termination; her supervisor, Soquena, never informed her of any work performance problems; and she always received excellent employment evaluations. Nozawa also pointed to the termination letter she received, which stated that her termination was the result of reorganization and restructuring and did not reference inadequate work performance.[19] As to the alleged error involving Conradt, Nozawa explained that she had followed established procedure in obtaining a code from Mendes after Conradt provided the necessary paperwork in accordance with the JPR, and she then performed the override corrections.

Further, in the Mahoe Declaration attached to Nozawa's supplemental opposition, Mahoe averred that, while treasurer, he

---

[19] The parties also provide differing views as to whether the email exchanges between Nozawa and Mendes after the Warning letter demonstrate that Nozawa continued to make mistakes.

32

attended meetings in 2009 and 2010 at which Local 3 officers discussed replacing women dispatchers with men. Mahoe stated that he objected, as he felt Nozawa was doing a good job and wanted her to remain as the dispatcher. Additionally, Mahoe named Reding and Burns as two of the officers present at the specified meetings, and as Local 3's evidence shows, both Reding and Burns were involved in the decision to terminate Nozawa.

In sum, Nozawa provided evidence contradicting Local 3's contention that she was terminated due to reorganization and deficient job performance. Thus, the evidence, viewed in the light most favorable to Nozawa, demonstrates that there is a genuine issue as to whether Local 3's reasons for terminating her were pretextual.[20] "[S]ummary judgment should not be granted unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances." Simmons, 130 Hawai'i at 332, 310 P.3d at 1033 (alteration in original) (quoting Balthazar v. Verizon Haw.,

---

[20] Relying on Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054 (9th Cir. 2002), Local 3 contends that the inquiry is whether the employer's honest belief in the employee's misconduct was the reason for the employee's termination. This reliance is misplaced because there is a genuine issue of material fact as to whether Local 3 honestly believed its reasons for terminating Nozawa. See Lales, 133 Hawai'i at 358, 328 P.3d at 367 (holding that the defendants' reliance on Villiarimo was unpersuasive because there was a genuine issue of material fact as to whether the employer honestly believed its reasons for its actions).

Inc., 109 Hawaiʻi 69, 72, 123 P.3d 194, 197 (2005)).

Accordingly, the circuit court erred in granting summary judgment in favor of Local 3.

### IV.    CONCLUSION

Based on the foregoing, the ICA's July 28, 2017 Judgment on Appeal, the circuit court's October 18, 2013 final judgment, the circuit court's order granting the motion for summary judgment, and the December 4, 2013 order denying Nozawa's motion for reconsideration are vacated, and the case is remanded to the circuit court for further proceedings.

| | |
|---|---|
| Charles H. Brower and Michael Healy for petitioner | /s/ Mark E. Recktenwald |
| | /s/ Paula A. Nakayama |
| Ashley K. Ikeda and David A. Rosenfeld for respondent | /s/ Sabrina S. McKenna |
| | /s/ Richard W. Pollack |
| | /s/ Michael D. Wilson |

