<span style="color:red">**Electronically Filed
Intermediate Court of Appeals
CAAP-24-0000804
27-MAY-2026
07:58 AM
Dkt. 56 OP**</span>

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---o0o---


CRESCENT CUSTOM HOMES MAUI LLC,
a Hawaiʻi limited liability company, Lienor-Appellant,
v.
PAUL R. CAUSEY; MARIANITA CAUSEY;
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,
a Delaware corporation, as Nominee for CITIBANK, N.A.,
Respondents-Appellees, and DOES 1-10, Respondents


NO. CAAP-24-0000804


APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CASE NO. 2CML-23-0000006)


MAY 27, 2026


HIRAOKA, PRESIDING JUDGE, MCCULLEN AND GUIDRY, JJ.


OPINION OF THE COURT BY HIRAOKA, J.


This is an appeal from the dismissal of **Crescent** Custom Homes Maui LLC's mechanic's lien application affecting property owned by Paul R. Causey and Marianita Causey. Crescent appeals from the *Final Judgment* entered by the Circuit Court of the Second Circuit.[1] The Causeys challenge our jurisdiction.

---

[1] The Honorable Michelle L. Drewyer presided.

We hold: (1) an order dismissing a mechanic's lien application is appealable upon entry of a final judgment; (2) Crescent's notice of appeal was timely; and (3) Hawaii Administrative Rules (**HAR**) § 16-77-80(a)(2) (2004) is invalid because it is inconsistent with Hawaii Revised Statutes (**HRS**) § 507-42 (2018); but (4) Crescent's home construction contract with the Causeys is unenforceable because it did not comply with HAR § 16-77-80(a)(5). We affirm the Final Judgment dismissing the mechanic's lien application.

## I. BACKGROUND

Crescent is a Hawaiʻi-licensed general building contractor. It contracted to build a custom single-family home for the Causeys on a cost-plus-percentage basis.[2] The contract included an estimated budget of $2.25 million. The Causeys allegedly defaulted on paying Crescent $926,652.14 "for the value of labor and material furnished by" Crescent.

Crescent applied for a mechanic's lien on the Causeys' property under HRS Chapter 507. The Causeys moved to dismiss the application. The circuit court granted the motion and entered findings of fact, conclusions of law, and an order dismissing the application. Crescent appealed. The circuit court entered the Final Judgment after two temporary remands.

---

[2] Under a cost-plus contract, "the contractor is entitled to recover, as the case may be, his or her costs plus an agreed percentage, or costs plus an agreed fixed fee." 17A C.J.S. Contracts § 513 (West 2026) (footnotes omitted).

## II. POINTS OF ERROR

Crescent contends the circuit court erred by depriving it of "the right to enter into cost plus contracts"; disregarding "qualifying language in the administrative rule" upon which its ruling was based; and violating "numerous applicable canons of statutory construction."

The Causeys contest our jurisdiction over Crescent's appeal.

## III. STANDARDS OF REVIEW

### A.    Jurisdiction

The existence of jurisdiction is a question of law reviewed *de novo* under the *right/wrong* standard. Ass'n of Apartment Owners of Century Ctr. v. An, 139 Hawaiʻi 278, 284, 389 P.3d 115, 121 (2016).

### B.    Motion to Dismiss

Mechanic's lien applications are subject to the Hawaiʻi Rules of Civil Procedure (**HRCP**). HRCP Rule 81. Orders granting motions to dismiss are reviewed *de novo*. Kealoha v. Machado, 131 Hawaiʻi 62, 74, 315 P.3d 213, 225 (2013). If, on a motion to dismiss for failure to state a claim upon which relief can be granted, the court considers matters outside the pleadings, the motion is converted into one for summary judgment and disposed of under HRCP Rule 56. HRCP Rule 12(b). That happened here.

### C.    Motion for Summary Judgment

We review a grant of summary judgment *de novo*. Nozawa v. Operating Engineers Local Union No. 3, 142 Hawaiʻi 331, 338,

418 P.3d 1187, 1194 (2018). Summary judgment is appropriate when the moving party shows, by admissible evidence, that the material facts are uncontroverted and it is entitled to judgment as a matter of law. Id. at 342, 418 P.3d at 1198. Once the movant has satisfied its initial burden, the party opposing summary judgment must "demonstrate specific facts, as opposed to general allegations, that present a genuine issue worthy of trial." Id. The circuit court made findings of fact, but "findings of fact made by a trial court in relation to a summary judgment ruling are not binding on appeal, nor do they alter our *de novo* standard of review regarding a summary judgment ruling." Hilo Bay Marina, LLC v. State, 156 Hawaiʻi 478, 487, 575 P.3d 568, 577 (2025).

### D.    Statutory Interpretation

Interpretation of a statute is a question of law reviewed *de novo*. Barker v. Young, 153 Hawaiʻi 144, 148, 528 P.3d 217, 221 (2023). We start with the statute's language; "implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself." Id. "The rules of statutory interpretation require us to apply a plain language analysis when statutory language is clear. Only when there is an ambiguity in a statute are we to resort to other methods of statutory interpretation." Id. at 149, 528 P.3d at 222.

### E.    Interpretation of Administrative Rules

Interpretation of an administrative rule is a question of law reviewed *de novo*. Honoipu Hideaway, LLC v. Land Use

4

Comm'n, 156 Hawai'i 367, 372, 575 P.3d 24, 29 (2025). "If an administrative rule's language is unambiguous, and its literal application is neither inconsistent with the policies of the statute the rule implements nor produces an absurd or unjust result, courts enforce the rule's plain meaning." Id.

## IV. DISCUSSION

We address the Causeys' jurisdiction arguments first because they are potentially dispositive.

### A. We have jurisdiction over Crescent's appeal.

The Causeys contend (1) the dismissal order is interlocutory, and (2) Crescent's notice of appeal was untimely.

#### 1. An order dismissing a mechanic's lien application is appealable upon entry of a final judgment.

The dismissal order ended the mechanic's lien proceeding, leaving nothing further to be accomplished. Cf. Ditto v. McCurdy, 103 Hawai'i 153, 158, 80 P.3d 974, 979 (2003) (noting that post-judgment order returning garnished funds, awarding costs, and denying attorney fees "left nothing further to be accomplished and was, therefore, final"). It became appealable once the circuit court entered the separate judgment required under HRCP Rule 58 and Jenkins v. Cades Schutte Fleming & Wright, 76 Hawai'i 115, 869 P.2d 1334 (1994).

The Causeys rely on 808 Development, LLC v. Murakami, 111 Hawai'i 349, 141 P.3d 996 (2006); VTN Pacific, Inc. v. Bishop Development, Inc., 58 Haw. 104, 565 P.2d 980 (1977); and Koga Engineering & Construction, Inc. v. Castle Hills Ventures, 7 Haw.

5

App. 151, 748 P.2d 1370 (1988). 808 Development actually supports jurisdiction. There, the mechanic's lien applicant appealed from a judgment for the respondent homeowners after the circuit court dismissed the lien application. 111 Hawaiʻi at 351, 141 P.3d at 998. The supreme court decided the appeal on the merits.

In VTN Pacific the respondent mortgagee appealed from an order *granting* the mechanic's lien application. 58 Haw. at 104, 565 P.2d at 980. In Koga Engineering, the mechanic's lien applicant appealed from an order partially granting and partially denying its lien application. 7 Haw. App. at 152, 748 P.2d at 1371. In both cases, the order directing the lien to attach was interlocutory pending "proceedings . . . to collect the amount due thereon by enforcing the same." HRS § 507-43(e) (2018). Neither case applies here, where the circuit court dismissed the lien proceeding and eventually entered a final, appealable judgment.

The Causeys argue that dismissal of the application is interlocutory because Crescent could still sue for damages, or pursue a claim in arbitration. The Causeys ignore that the circuit court accepted their argument that Crescent's contract was void under HRS § 444-25.5 and HAR § 16-77-80. If the contract is void, Crescent could not seek contractual damages. If the contract contained an arbitration agreement, it would be unenforceable. Crescent would be limited to seeking recovery in quantum meruit. 808 Development, 111 Hawaiʻi at 361, 141 P.3d at 1008; Hiraga v. Baldonado, 96 Hawaiʻi 365, 372, 31 P.3d 222, 229

6

(App. 2001). There would be no mechanic's lien for Crescent to enforce; Crescent would have to obtain a judgment against the Causeys before it could attach a lien to their property.

We hold that an order dismissing a mechanic's lien application is appealable upon entry of a final judgment.

### 2.    Crescent's notice of appeal was timely.

The dismissal order was entered on June 4, 2024. Crescent moved for reconsideration on June 14, 2024, within the time required under HRCP Rule 59(b). The order denying reconsideration was entered on November 1, 2024. The notice of appeal was filed on November 27, 2024, before entry of a final judgment. It was deemed filed when the Final Judgment was entered on April 30, 2026, on the second temporary remand. Hawaiʻi Rules of Appellate Procedure Rule 4(a)(2).

### B.    The circuit court did not err by dismissing Crescent's mechanic's lien application.

Mechanic's liens are authorized by HRS § 507-42. The statute provides, in relevant part:

> Any person or association of persons[3] furnishing labor or material in the improvement of real property shall have a lien upon the improvement as well as upon the interest of the owner of the improvement in the real property upon which the same is situated, or for the benefit of which the same was constructed, for the price agreed to be paid (if the price does not exceed the value of the labor and materials), or if the price exceeds the value thereof or if no price is agreed upon by the contracting parties, for the fair and

---

[3]    General contractors and subcontractors who are required to be, but are not, licensed under HRS Chapter 444 have no lien rights under HRS Chapter 507. HRS § 507-49 (2018); see also HRS § 444-22 (2013); Hiraga, 96 Hawaiʻi at 367, 31 P.3d at 224 (noting that HRS § 444-22 "prohibits an unlicensed contractor from 'recovering for work done, or materials or supplies furnished, or both on a contract or on the basis of the reasonable value thereof'").

reasonable value of all labor and materials covered by their contract, express or implied.

Crescent's mechanic's lien application alleged it contracted with the Causeys to build a residence on the Causeys' property "according to certain plans and specifications identified in the Contract." A copy of the **Contract**, which the Causeys signed on December 23, 2020, was attached to the application. The Contract incorporated these documents:

> 1. Draft Architectural Plans and Drawings. (to be submitted at later date but represent 3300 Sq. Foot home 4 Bed/4 Bath with 2+ cart and car garage)
>
> 2. Draft Budget Totaling Estimated Hard and Soft Construction Costs of $2,255,930.40
>
> 3. Disclosures by Builder to Owner

A copy of a summary accounting detailing $926,652.14 allegedly owed under the Contract was also attached to the application.

The Causeys responded by moving to dismiss. They argued the Contract was void because it didn't comply with HRS § 444-25.5 and its related administrative rule, HAR § 16-77-80. As relevant here, the statute provides:

> **§444-25.5 Disclosure; contracts.** (a) Prior to entering into a contract with a homeowner, or at the time a homeowner signs a contract, involving home construction or improvements, licensed contractors shall:
>
> (1) Explain verbally in detail to the homeowner all lien rights of all parties performing under the contract, including the homeowner, the contractor, any subcontractor, or any materialman supplying commodities or labor on the project;
>
> (2) Explain verbally in detail the homeowner's option to demand bonding on the project, how the bond would protect the homeowner, and the approximate expense of the bond; and

8

>   (3)     Disclose all information pertaining to the
>           contract and its performance and any other
>           relevant information that the board may require
>           by rule.
>
>   (b)     All licensed contractors performing home
> construction or improvements shall provide a written
> contract to the homeowner.  The written contract shall:
>
>   (1)     Contain the information provided in
>           subsection (a) ***and any other relevant
>           information that the board may require by
>           rule***[.]

HRS § 444-25.5 (2013) (emphasis added).

The Contractor License Board may adopt rules it deems proper "to effectuate this chapter and carry out the purpose thereof, which is the protection of the general public."  HRS § 444-4(2) (2013).  Once adopted, the rules "have the force and effect of law."  Id.

As relevant here, HAR § 16-77-80 provides:

> §16-77-80  Homeowner contracts.  (a) All contractors
> shall provide homeowners with a written contract involving
> home construction or improvements which shall provide the
> following:
>
>   (1)     The name, address, license number, and
>           classification(s) of the contractor;
>
>   (2)     ***The exact dollar amount due from the homeowner
>           under the contract***;
>
>   (3)     The date work is to commence and number of days
>           for completion;
>
>   (4)     The scope of the work to be performed and
>           materials to be used;
>
>   (5)     The approximate percentage of work to be
>           subcontracted and ***the names and license numbers
>           of all subcontractors***, if any;
>
>   (6)     A clear statement of the risk of loss of any
>           payments made to a sales representative (printed
>           in distinct capital letters next to the owner's
>           signature line);
>
>   (7)     A provision explaining the lien rights of all
>           parties performing under the contract including
>           the contractor, any subcontractor, or any
>           materialman supplying commodities or labor on
>           the project;

(8)     The terms of any warranty offered; and

(9)     The signatures of the homeowner and the
        contractor.

(Emphasis added.)

### 1.     HAR § 16-77-80(a)(2) is invalid because it is inconsistent with HRS § 507-42.

The Contract, being one for cost-plus-percentage, did not include the "exact dollar amount due from the homeowner under the contract" as required by HAR § 16-77-80(a)(2).  The Causeys' declarations supporting their motion stated they "were never offered a stipulated sum contract by" Crescent, who "insisted on [a] cost-plus contract."[4]  The Contract provided for "Estimated Hard and Soft Construction Costs of $2,255,930.40" and stated:

> **VI.   Contract Price**
>
> Owner agrees to pay a total price of <u>All Hard and Soft Costs plus 20% Markup on all such costs</u>, to Builder for construction of the building(s), and Builder agrees to provide all the labor, materials, equipment, tools, and other services necessary to construct the building(s).  It is noted that the Builder shall have first right of refusal to perform any and all trade related work such as; [sic] excavation, concrete, framing, siding or any other trades.  Such work shall be mutually agreed between Owner and Contractor.  Such authorizations can be confirmed with email correspondence and pricing agreed between the parties shall be considered hard costs for Cost Plus Calculations.
>
> . . . .
>
> (6)     As additional compensation Owner and Builder agree that any cost savings below the estimated budget will be equally split on a 50/50 percent basis between the parties,[5] it is further understood that the builders fee will not be charged on these cost savings.

---

[4]     The motion was also supported by a declaration from the Causeys' attorney, which offered legal and other opinions that we disregard.

[5]     This is a departure from the standard cost-plus-percentage contract, in which "the owner, and not the builder, enjoys the advantage or suffers the risk of costs that are lower or higher than estimated."  17A C.J.S. <u>Contracts</u> § 513.  Here, Crescent took no risk that actual costs would be higher than estimated, and would also benefit if actual costs were lower, diminishing any potential benefit to the Causeys.

Crescent opposed the Causeys' motion with a declaration from its manager, Calvin **Baty**. Baty stated he negotiated the Contract with the Causeys, who agreed to a cost-plus contract. According to Baty, the Causeys "had not provided Crescent with a set of architectural plans and specifications that could provide the basis for Crescent to make a more accurate take-off of the cost of the Project." The $2,255,930.40 cost estimate was based on the Causeys' representations "that their home would be 3,300 square feet" and about "their intended scope of work for the Project."

For the motion on Crescent's mechanic's lien application, the conflicting declarations do not create genuine issues of material fact because the Causeys do not controvert they signed the Contract, or its terms.

HAR § 16-77-80(a)(2) is inconsistent with HRS § 507-42. The statute allows a mechanic's lien to attach:

> for the price agreed to be paid (if the price does not exceed the value of the labor and materials), or if the price exceeds the value thereof *or if no price is agreed upon by the contracting parties*, for the fair and reasonable value of all labor and materials covered by their contract, express or implied.

(Emphasis added.)

HRS § 507-42 thus contemplates cost-plus contracts, and contains no exception for home construction. "Neither the courts nor the administrative agencies are empowered to rewrite statutes to suit their notions of sound public policy where the legislature has clearly and unambiguously spoken." Asato v.

Procurement Pol'y Bd., 132 Hawaiʻi 333, 350, 322 P.3d 228, 245 (2014) (cleaned up).  The Contractor License Board may have tried to protect homeowners by requiring home construction contracts to state the "exact dollar amount due from the homeowner," consistent with its mandate under HRS § 444-4(2).  But "the statutory scheme [(that permits cost-plus contracts without exception)] must be upheld, requiring that the regulation be invalidated."  Asato, 132 Hawaiʻi at 350, 322 P.3d at 245.

### 2. The Contract did not comply with HAR § 16-77-80(a)(5).

The Causeys' declarations also stated that Crescent was to retain and pay the specialty subcontractors (for example, plumbing; roofing; heating, ventilation and air conditioning; and electrical).  The Contract did not include the "approximate percentage of work to be subcontracted and the names and license numbers of all subcontractors, if any" as required by HAR § 16-77-80(a)(5).  Instead, it stated:

> iv. **Use of Subcontractors**.  Builder intends to perform the services and work set forth in Section V[6] of the Contract, including any agreed-upon change orders.  It is expected at the time of signing this Contract that the following services will be provided by the subcontractors identified below:
>
> a. Plumbing.  ABC Plumbing
> b. Electrical.  DEF Electric
> c. Roofing.  GHI Roofing
> d. ETC

According to Baty, the Causeys "insisted from the outset that they wanted the right to directly hire and obtain

---

[6]     Section V of the Contract is titled "Completion Time."  It did not set forth the scope of services or work to be performed by Crescent or any subcontractors.

estimates from subcontractors and suppliers for the Project." He and the Causeys "discussed the approximate percentage of the work to be subcontracted, although at the time [the Causeys] had not selected the subcontractors they wanted to hire to perform work on the Project." Baty also stated the percentage of work to be subcontracted could not be identified in the Contract because the Causeys hadn't decided which subcontractors they would hire.

Again, for the motion on Crescent's mechanic's lien application, the Causeys' and Baty's conflicting declarations do not create genuine issues of material fact. To comply with HAR § 16-77-80(a)(5), it doesn't matter who decides what work will be subcontracted or which subcontractors to use; the rule requires only that the parties agree what work is to be subcontracted (or excluded from the general contractor's scope of work if the homeowner is to directly retain specialty contractors), and who the licensed subcontractors will be, before a homeowner signs a home construction contract.

An administrative rule is enforceable if "its literal application is neither inconsistent with the policies of the statute the rule implements nor produces an absurd or unjust result[;] courts enforce the rule's plain meaning." Honoipu Hideaway, 156 Hawaiʻi at 372, 575 P.3d at 29.

The Contractor License Board may adopt rules for "the protection of the general public." HRS § 444-4(2). Requiring a home construction contract to identify the approximate percentage of the work to be subcontracted and the licensed subcontractors who are to perform it prevents a general contractor from using

13

unlicensed subcontractors, and from subcontracting work without the homeowner's consent.  Crescent cites no statute that is inconsistent with that requirement.

Crescent argues it substantially complied with HAR § 16-77-80(a)(5) because subcontractors hadn't been selected before the Contract was executed, and it should retain its lien rights if it "substantially complies with the statutory notice requirements."  It relies on 808 Development, where the supreme court stated "the contractor, 808 Development, did not comply with *or even substantially comply with* the statutory notice requirements for mechanic's liens."  111 Hawaiʻi at 361, 141 P.3d at 1008 (emphasis added).

In 808 Development the contractor had argued that the homeowners were sophisticated developers, and "strict compliance with HRS § 444-25.5 is not necessary where the owner is sophisticated and knowledgeable about lien and bonding issues." Id. at 360, 141 P.3d at 1007.

The supreme court disagreed, stating that "[t]he plain language of HRS § 444-25.5 does not provide any exceptions to the statutory requirements that would exempt sophisticated homeowners or anyone else from its protections."  Id.  The court "decline[d] to create an exception to the clear statutory requirements of HRS § 444-25.5 and, instead, adhere[d] to a bright-line standard that provides clear guidance to owners and contractors alike."  Id. at 361, 141 P.3d at 1008.

Here, the bright line set by HAR § 16-77-80(a)(5) requires the general contractor and homeowner to agree what work

14

will be subcontracted, and which licensed subcontractors will be used, before a homeowner signs a home construction contract. Crescent's contract with the Causeys did not comply. It was thus unenforceable. HRS §§ 444-25.5(d) and 480-12 (2008); 808 Development, 111 Hawaiʻi at 356, 141 P.3d at 1003.

## V. CONCLUSION

As a matter of law, Crescent's home construction contract with the Causeys was unenforceable because it did not comply with HAR § 16-77-80(a)(5). The circuit court did not err by dismissing Crescent's mechanic's lien application. The April 30, 2026 Final Judgment is affirmed.

The parties must bear their own attorney fees. See 808 Development, 111 Hawaiʻi at 366, 141 P.3d at 1013 (stating that a mechanic's lien application is statutory, not in the nature of assumpsit under HRS § 607-14).

On the briefs:

Anna H. Oshiro,
Kira-Nariese K. Brown,
Jack R. Naiditch,
for Lienor-Appellant
Crescent Custom Homes
Maui LLC.

Scott I. Batterman,
for Respondents-Appellees
Paul R. Causey and
Marianita Causey.

/s/ Keith K. Hiraoka
Presiding Judge

/s/ Sonja M.P. McCullen
Associate Judge

/s/ Kimberly T. Guidry
Associate Judge