NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER

**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-16-0000812**
**08-DEC-2020**
**08:57 AM**
**Dkt. 95 MO**

NO. CAAP-16-0000812

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

ASSOCIATION OF OWNERS OF KALELE KAI, Plaintiff-Appellee,
v.
HITOSHI YOSHIKAWA, Defendant-Appellant,
and
DOE DEFENDANTS 1-10, Defendants

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(Civil No. 15-1-0102)

MEMORANDUM OPINION
(By:  Ginoza, Chief Judge, Leonard and Hiraoka, JJ.)

Defendant-Appellant Hitoshi Yoshikawa (**Yoshikawa**) appeals from the "Findings of Fact, Conclusions of Law, and Order Granting Motion for Summary Judgment Filed 3/17/15 and Injunction Against Hitoshi Yoshikawa" (**Order Granting MSJ**) entered by the Circuit Court of the First Circuit[1] on August 14, 2015, and from the **"First Amended Final Judgment"** in favor of Plaintiff-Appellee Association of Owners of Kalele Kai (**Association**) and against Yoshikawa, entered on November 9, 2016.  For the reasons explained below, we vacate the Order Granting MSJ and vacate in part the First Amended Final Judgment, and remand this case to the circuit court for further proceedings.

---

[1]     The Honorable Karen T. Nakasone presided.

## BACKGROUND

The Association is the owners' association for the 219-unit Kalele Kai residential condominium.  The condominium sits on the Hawaii Kai waterfront and includes a marina with a concrete dock running parallel to the shoreline.  The dock originally contained a number of 23-foot long finger piers, perpendicular to the dock, creating mooring space for 60 boats.

Yoshikawa owns one of the condominium units (**Apt. 106**) and six of the mooring spaces (**B28-B33**).  Yoshikawa's predecessor in interest, Richard Francis Rosic (**Rosic**), removed the finger piers for B28-B33 to create one long mooring space in which a vessel could be "side-tied" parallel to the dock.  Rosic moored his boat (the **Ariel**) at B28-B33.  The Ariel was more than 38 feet long.  Yoshikawa purchased Apt. 106, B28-B33, and the Ariel from Rosic in October 2010.

Yoshikawa, like Rosic, moored the Ariel in B28-B33 until he sold the boat in August 2013.  Later that year Yoshikawa purchased another boat (the **ROLA**) that measured more than 49 feet from stem to stern.[2]  Yoshikawa moored the ROLA at B28-B33.  At some point the Association took issue with Yoshikawa mooring the ROLA at B28-B33.  Yoshikawa and the Association agreed to arbitrate their dispute pursuant to Hawaii Revised Statutes (**HRS**) § 514B-162.[3]  The arbitration hearing was conducted over five

---

[2] In nautical terminology the "stem" is an upright at the bow (front) of a vessel and the "stern" is the back end.

[3] HRS § 514B-162 (2006) provides, in relevant part:

(a)  At the request of any party, any dispute concerning or involving one or more unit owners and an association . . . relating to the interpretation, application, or enforcement of this chapter or the association's declaration, bylaws, or house rules adopted in accordance with its bylaws shall be submitted to arbitration. . . .

. . . .

(f)  The award of the arbitrator shall be in writing[.] . . . At any time within one year after the award is made and served, any party to the arbitration may apply to the circuit court . . . for an order confirming the

(continued...)

2

days during August, September, and October 2014.  The arbitrator issued a partial final award on December 12, 2014.

On January 21, 2015, the Association filed a "Complaint for Trial De Novo" against Yoshikawa.  The arbitrator issued a final award on February 11, 2015.  On February 20, 2015, the Association filed a "First Amended Complaint for Trial De Novo."

The Association's amended complaint alleged that Yoshikawa moored the ROLA at B28-B33 despite provisions in Kalele Kai's Declaration of Condominium Property Regime (**Declaration**) limiting the use of the moorings to "boats no larger than twenty-three (23) feet in length."  The Association issued a notice of violation to Yoshikawa, but Yoshikawa continued to moor the ROLA at B28-B33.  The amended complaint sought declaratory and injunctive relief (Count I) and damages for Yoshikawa's alleged breach of the Association's governing documents (Count II).

On March 17, 2015, the Association filed a motion for summary judgment (**MSJ**) supported by declarations and exhibits. The Association also filed a supplemental declaration and exhibit in support of its MSJ.  Yoshikawa filed a memorandum in opposition to the MSJ, also supported by declarations and exhibits.  The Association filed a reply memorandum.  The MSJ was heard on April 28, 2015.  The circuit court took the MSJ under advisement.

On April 29, 2015, Yoshikawa filed an answer to the Association's amended complaint, a counterclaim, and a "cross-claim" against Bradford Oakes (**Oakes**) and Darla Sabry (**Sabry**), who were alleged to be members of the Association's board of directors.  The Association moved to dismiss the counterclaim and cross-claim.  On August 6, 2015, the circuit court entered an order granting the Association's motion to dismiss (**Order Granting Motion to Dismiss Counterclaim and Cross-claim**). Yoshikawa moved for leave to file an amended counterclaim and

---

[3]      (...continued)
award. The court shall grant the order confirming the award pursuant to section 658A-22, unless . . . a trial de novo is demanded under subsection (h)[.]

cross-claim. The circuit court denied the motion by order entered on November 3, 2015 (**Order Denying Leave to Amend**).

Meanwhile, on August 14, 2015, the circuit court entered the Order Granting MSJ. The order contained a conclusion of law stating: "An injunction in favor of the Association and against Yoshikawa is appropriate and necessary to enforce the restriction[s] against Yoshikawa, and enjoin any future violations." Yoshikawa filed a notice of appeal. We dismissed the appeal for lack of jurisdiction. Ass'n. of Owners of Kalele Kai v. Yoshikawa, No. CAAP-15-0000584, 2015 WL 6966236, at *2 (Haw. App. Nov. 10, 2015).

On February 3, 2016, the circuit court entered the "Final Judgment." Yoshikawa filed another notice of appeal. We again dismissed the appeal for lack of jurisdiction. Ass'n. of Owners of Kalele Kai v. Yoshikawa, No. CAAP-16-0000129, 2016 WL 5468247, at *3 (Haw. App. Sept. 29, 2016).

The circuit court entered the First Amended Final Judgment on November 9, 2016. The First Amended Final Judgment awarded judgment in favor of the Association and against Yoshikawa on all claims alleged in the First Amended Complaint, included an injunction mandating that Yoshikawa remove the ROLA from the Kalele Kai marina, and prohibited Yoshikawa from mooring any boat longer than 23 feet in length at the marina "unless and until [the Association] duly approves an amendment in accordance with HRS [§ ]514B-32(a)(11) to modify the 23[-]foot boat length restriction set forth in Section 5 of the Kalele Kai Declaration." The First Amended Final Judgment also awarded judgment in favor of the Association and against Yoshikawa on Yoshikawa's counterclaim, and in favor of Oakes and Sabry and against Yoshikawa on Yoshikawa's cross-claim (which the circuit court correctly construed to be a third-party complaint). Finally, the First Amended Final Judgment awarded attorneys' fees and costs to the Association against Yoshikawa pursuant to four interlocutory circuit court orders.

This appeal followed. Yoshikawa's single point of error contends that the circuit court erred by granting the Association's MSJ because Yoshikawa raised genuine issues of material fact. Although not mentioned in his points of error, Yoshikawa also argues that the circuit court erred by denying his oral motion to continue the MSJ hearing under Rule 56(f) of the Hawaiʻi Rules of Civil Procedure (**HRCP**). Yoshikawa's statement of points of error does not mention the Order Granting Motion to Dismiss Counterclaim and Cross-claim, the Order Denying Leave to Amend, or any of the circuit court's interlocutory orders awarding attorneys' fees and costs to the Association; nor does his opening brief argue that the circuit court erred in granting the Association's motion to dismiss, denying his motion to amend, or awarding attorneys' fees or costs under any of the four interlocutory orders.

## STANDARDS OF REVIEW

### Summary Judgment

An appellate court reviews a trial court's grant or denial of summary judgment de novo using the same standard applied by the trial court. <u>Nozawa v. Operating Engineers Local Union No. 3</u>, 142 Hawaiʻi 331, 338, 418 P.3d 1187, 1194 (2018). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. <u>Id.</u> at 342, 418 P.3d at 1198. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. <u>Id.</u>

### Restrictive Covenants

In construing restrictive covenants governing the use of land, we are guided by the same rules that are applicable to the construction of contracts. The fundamental rule is that the intent of the parties, as gleaned from the entire context of the covenant, governs. As long as the terms of a

5

covenant are not ambiguous, i.e., not capable of being reasonably understood in more ways than one, we are required to interpret the terms according to their plain, ordinary, and accepted sense in common speech. Whether a covenant's language is ambiguous is a pure question of law, which this court reviews de novo. Moreover, if the language of the covenant is clear and unambiguous, and the meaning of the covenant can be readily discerned from the instrument itself, the legal effect and construction of the covenant is also a question of law.

Sandomire v. Brown, 144 Hawaiʻi 314, 324, 439 P.3d 266, 276 (App. 2019) (cleaned up), cert. rejected, No. SCWC-17-0000199, 2019 WL 6525181 (Haw. Dec. 4, 2019).

### HRCP Rule 56(f) Continuance

[A] trial court's decision to deny a request for a continuance pursuant to HRCP Rule 56(f) will not be reversed absent an abuse of discretion. Additionally, the request must demonstrate how postponement of a ruling on the motion will enable [them], by discovery or other means, to rebut the movants' showing of absence of a genuine issue of fact.

U.S. Bank Nat'l Ass'n v. Castro, 131 Hawaiʻi 28, 39, 313 P.3d 717, 728 (2013) (cleaned up) (citation omitted).

### DISCUSSION

**A.    The Association did not satisfy its burden as the summary judgment movant.**

A party moving for summary judgment has the burden to establish that summary judgment is proper; that is, that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Nozawa, 142 Hawaiʻi at 342, 418 P.3d at 1198. The evidence presented by the movant must be viewed in the light most favorable to the party opposing summary judgment. Id.

The evidence presented by the Association, viewed in the light most favorable to Yoshikawa, showed that Apt. 106 and moorings B28-B33 were conveyed to Yoshikawa from Rosic by Apartment Deed dated October 22, 2010 (**Deed**). The Deed was subject to the Declaration and the "Bylaws of the Association of Owners of Kalele Kai" (**Bylaws**). The Declaration and Bylaws were

6

recorded in the Hawaiʻi state Bureau of Conveyances.  Yoshikawa acknowledged receipt of the Declaration and Bylaws on October 10, 2010.

The Declaration contained the following restrictive covenants and non-waiver provision:

> 5.  <u>Common Elements</u>.  One freehold estate is hereby designated in all of the remaining portions and appurtenances of the Project (hereinafter referred to as the "common elements"), including specifically, but not limited to:
>
> . . . .
>
> (j)  Two (2) boat moorings (designated B7 and B8 on the Condominium Map).  ***The boat moorings shall be restricted to use by boats no larger than twenty-three (23) feet in length***[.] . . . All remaining boat moorings of the Project shall be designated as "limited common elements" appurtenant to designated condominium units as described in more detail hereinbelow;
>
> . . . .
>
> <u>Limited Common Elements</u>:
>
> The following common elements, (hereinafter referred to and designated as "limited common elements"), are hereby set aside and reserved for the exclusive use of certain condominium units, and such condominium units shall have appurtenant thereto exclusive easements for use of such limited common elements.  The limited common elements so set aside and reserved are as follows:
>
> . . . .
>
> (b)  All boat moorings shall be identified by the letter "B" and a number.  Condominium unit 3110 initially shall have appurtenant thereto boat moorings B1 through B6, inclusive, and B9 through B60, inclusive, as designated on the Condominium Map. . . . [B7 and B8 remain common elements.]  [T]he Developer, as the initial owner of condominium unit 3110, shall have the right to amend this Declaration (1) prior to the conveyance of condominium unit 3110, to transfer and redesignate any unsold boat moorings from condominium unit 3110 to any other condominium unit(s), and (2) as often as is necessary thereafter, to transfer and redesignate any unsold boat moorings from any condominium units owned by the Developer to any other condominium unit(s). . . . Such ***condominium units shall enjoy the exclusive use of the boat moorings appurtenant thereto***, subject to that certain Declaration of Protective Provisions (Hawaii Kai Marina) and any rules and regulations promulgated thereunder, this Declaration, the Bylaws and any house rules adopted by the Board. . . . ***[O]wners shall have the right to transfer and change the designation of boat moorings which are appurtenant to their respective condominium units*** by recordation in the Bureau of an

> amendment to this Declaration and appropriate conveyance
> document, both signed by the seller and the buyer of the
> boat mooring, and their respective mortgagees, if any.
>
> ***The boat mooring shall be restricted to use by boats
> no larger than twenty-three (23) feet in length***. . . .
>
> . . . .
>
> 22.  <u>Waiver</u>.  No provision contained in this
> Declaration shall be deemed to have been abrogated or waived
> by reason of any failure to enforce the same, irrespective
> of this Declaration nor the intent of any provision hereof.

(Emphasis added.)

The Declaration unambiguously states that a boat moored at a limited common element mooring must be no longer than 23 feet.  The Association submitted deposition testimony by Yoshikawa establishing that he purchased Apt. 106, B28-B33, the Ariel, a kayak, and a "sail yacht" from Rosic.  Yoshikawa admitted that the ROLA was moored at Kalele Kai, and that the ROLA was more than 23 feet long.  Yoshikawa's mooring of the ROLA at B28-B33 violates the unambiguous restrictive covenant in the Declaration because the ROLA is longer than 23 feet.  But so was the Ariel.

The Declaration contemplates modification of the boat moorings:

> 17.  <u>Repair; Restoration; Alteration of Project</u>.
>
> . . . .
>
> (c)   . . . [A]ny additions or alterations to
> the . . . boat moorings . . . shall be undertaken only upon
> the review and approval by the Board and the Building
> Department of the City and County of Honolulu after the
> written consent of the Association is obtained by the
> affirmative vote of not less than sixty-seven percent (67%)
> of the owners and accompanied by the written consent of the
> holders of all liens affected thereby.

The Association submitted a copy of a letter dated May 6, 2013, from Yoshikawa's attorney to the Association's attorney.  Through the letter, Yoshikawa contended that the Association and Rosic had entered into a settlement agreement "confirming the rights of future owners to dock their boats in the modified" B28-B33 mooring space.  The letter also argued that the 23-foot boat

length limitation had "clearly been abandoned and waived due to the Association's decade[-]long policy of allowing owners to modify their moorings and dock boats in excess of 23'." Attached to the letter was a copy of a letter agreement dated June 9, 2009, and countersigned by Rosic and by the Association (**Rosic Settlement Agreement**). The Rosic Settlement Agreement stated, in part:

> The issue between the parties involves the modified boat dock currently owned by Mr. Rosic. The Board asserts it did not have the authority under the Association's governing documents to approve of the disposal, modification or reconfiguration of the boat dock or its individual finger piers by Mr. Rosic. Mr. Rosic asserts he began his purchase of additional boat docks in 2001 and by March of 2002, that he owned six (6) boat docks in total and had reconfigured the docks to accommodate a sixty-nine (69) foot side-tie for his boat. Mr. Rosic further alleges the Board approved his purchases and was made aware of his intent to move the intervening finger piers. In response, the Board contends no such approval is memorialized in the Board Meeting Minutes for the period in question. . . .
>
> As a result of our negotiation, it is our understanding that the following terms have been agreed to:
>
> 1. The Board will have sixty (60) days to pass an amendment to the Declaration that gives the Board the authority to approve boat dock modification proposals without owner consent and record same amendment.
>
> 2. The Board's proposed amendments to the Association's "Dock and Boat Rules" shall allow an owner at least a twelve (12) month period, which may be extended upon a reasonable request by the owner, to place a boat in a modified boat dock before replacement of the finger piers is required.
>
> 3. Mr. Rosic shall disclose to a buyer of his property that any subsequent owner must harbor a boat in the boat dock or else the Board may require the area to be reconfigured. In addition to keeping the area configured as it is presently, such owner would have the same rights (twelve months plus a reasonable extension period) as other owners.

The Rosic Settlement Agreement contained the following recitals:

> WHEREAS, the Association of Apartment [sic] Owners of Kalele Kai (hereinafter "Association") by its Board of Directors (hereinafter "Board"), seeks to amend its Declaration of Horizontal Property Regime ("Declaration"), Bylaws and House Rules (collectively, "governing documents") to authorize the

9

Board to approve the modifications of the Association's boat docks by owners;

WHEREAS, Richard Rosic (hereinafter "Mr. Rosic") is a homeowner at the Association as well as an owner of six (6) boat docks;

WHEREAS, ***pursuant to Board approval***, Mr. Rosic modified the six (6) boat docks to accommodate a sixty-nine (69) [foot] side-tie for his boat;

WHEREAS, Mr. Rosic is selling his home with the boat dock as modified;

WHEREAS, ***the above whereas clauses are material to this agreement and are not stated merely as a matter of form***;

Now, therefore, the parties agree as follows:

. . . .

3.  Upon passage of the proposed Declaration Amendment, the Board shall adopt the Boat and Dock Rules attached hereto as Exhibit 'A'.

4.  Upon recordation of the Declaration Amendment, all subsequent Boat and Dock Rules adopted by the Board shall allow an owner at least a twelve (12) month period to place a boat in a modified boat dock before replacement of the finger piers as [sic] required. The 12 month period may be extended upon a reasonable request by the owner.

5.  ***Mr. Rosic shall disclose to a buyer of his property that any subsequent owner must harbor a boat in the boat dock or else the Board may require the area to be reconfigured. In addition to keeping the area configured as it is presently, such owner would have the same rights (twelve months plus a reasonable extension period) as other owners.***

(Emphasis added.) The Rosic Settlement Agreement included a copy of "Proposed Dock and Boat Rules" that provided:

3.  D-5 If moorings are missing finger piers for any reason, they must be replaced prior to or at the time the boat mooring owner removes the existing boat and it is not replaced by a boat within twelve (12) months of the original boat's removal. Prior to the expiration of this deadline, the owner may make a written request to the Board for a reasonable extension thereof. The Board's decision in response to a request for extension shall be in writing and a timely request for an extension shall not be unreasonably denied by the Board.

4.  D-6 (a) When a modified boat mooring has one or more finger piers attached in parallel orientation to the common walkway, ***upon sale of the modified boat mooring, the new owner will have up to twelve (12) months from the transfer date to dock a boat in the mooring.*** Extensions of this

10

deadline may be sought in accordance with the procedures set forth in Section D-5 above.

(Emphasis added.)

The letter dated May 6, 2013, from Yoshikawa's counsel to the Association's counsel, argued that the Association had "abandoned and waived" the 23-foot length restriction "due to the Association's decade[-]long policy of allowing owners to modify their moorings and dock boats in excess of 23'." The Association's MSJ cited the Declaration's non-waiver provision and argued that the manner in which the Association had treated other unit-and-mooring owners in the past was not material to enforcement of the Declaration.

Viewed in the light most favorable to Yoshikawa, the Association's evidence did not establish the absence of genuine issues of material fact. The Rosic Settlement Agreement[4] and the Proposed Dock and Boat Rules appear to establish that the Association (through its board of directors)[5] approved Rosic's modification of B28-B33, and agreed to allow the buyer of Apt. 106, moorings B28-B33, and the Ariel to retain the side-tie configuration of B28-B33 and to moor the Ariel in that space. That evidence could make Yoshikawa an intended or incidental third-party beneficiary of the Rosic Settlement Agreement. If he was, he could be entitled to moor the Ariel at B23-B33 after purchasing them from Rosic. If he sold the Ariel and replaced it with the ROLA within 12 months, he could be entitled to moor the

---

[4]    Based on the evidence in the record, Rosic may not have complied with paragraph 17(c) of the Declaration before modifying his boat moorings. However, that issue may have been mooted by the Rosic Settlement Agreement, by which the Association ratified the alleged oral approval of Rosic's modification of B28-B33. See Ass'n of Apartment Owners of Maalaea Kai v. Stillson, 108 Hawai‘i 2, 15, 116 P.3d 644, 657 (2005) (holding that "when ratified, the prior unauthorized act has the same legal effect and results in the same contractual relations between the principal and the person with whom the agent has dealt as though the act of the agent originally had the prior authorization of the principal.") (cleaned up) (citation omitted).

[5]    A condominium owners' association may act through its board of directors unless the declaration or bylaws provides otherwise. HRS § 514B-106(a) (2006); Ass'n of Apartment Owners of Waikoloa Beach Villas v. Sunstone Waikoloa, LLC, 130 Hawai‘i 152, 162, 307 P.3d 132, 142 (2013).

ROLA at B23-B33 as well.  The existence of these material factual issues made summary judgment inappropriate.

> **B.   Yoshikawa's opposition to the MSJ raised additional issues of material fact.**

The evidence submitted by Yoshikawa in opposition to the Association's MSJ, viewed in the light most favorable to Yoshikawa, is that Rosic purchased Apt. 106 and boat moorings B28 and B29 in the spring of 2001.  At that time, the Kalele Kai marina "consisted of one main dock with finger piers that protrude in a perpendicular fashion, creating moorings."  The concrete dock was 700 feet long and ran parallel to the water's edge.  Rosic proposed to the Association his purchase of four additional moorings and removal of the finger piers to create a 69-foot side-tie mooring like the one created by the developer (moorings B7 and B8).  Rosic received verbal approval from the resident manager.  He then purchased a 40-foot long custom-designed motorized catamaran (the Ariel).  He also purchased moorings B30, B31, B32, and B33 from the Kalele Kai developer.

Rosic removed the first finger pier in December 2001. During the removal, a member of the Association's board of directors went to the dock and "commented that everything looked good and inquired as to when [Rosic's] boat would be arriving." Rosic removed the second finger pier in January 2002.  The Ariel was registered with the Hawaii Kai Marina on April 17, 2002. Rosic side-tied the Ariel at his modified mooring with the knowledge and consent of the Association and its resident manager.  The 23-foot boat length limit was imposed because the Association's easement (from the privately-owned Hawaii Kai Marina Community Association) for mooring boats extended 30 feet from the dock.  There is no indication in the record that the side-tied Ariel encroached over the Association's 30-foot mooring easement.  The Ariel was used for Kalele Kai "boat and dock socials" attended by the resident manager, the Association's board members, and Kalele Kai unit owners.

In 2003, Kalele Kai unit owners the Hungs and the Petersons asked Rosic how he modified his moorings. The Hungs and the Petersons modified their respective boat moorings to accommodate their side-tied 26-foot Glacier Bay catamarans.

Volume 12, Issue 4 of the Association's "Kalele Kurrents" newsletter (April 2006) states:

- The Kalele Kai boat docks are 23 feet long.

- If an owner has a boat that is too long to fit into a single slip, the piers can be moved to accommodate a larger boat parallel to the shore.

- Currently there are 17 boat docks available to owners of Kalele Kai to purchase. Some docks are for single slips and some groups of docks can accommodate larger vessels.

Rosic had been a member of the Association's board of directors, and was the board's president in 2006. The board approved all of the Association's newsletters, including the April 2006 issue. Between 2006 and 2008, several unit owners purchased and reconfigured boat moorings to accommodate boats longer than 23 feet. The Fratskis modified their moorings to accommodate a side-tied Bayliner over 23 feet in length. The Nakanishis moored a boat longer than 23 feet. The Rojeks moored a 37-foot Doral Elegante. In 2008 there were four boats longer than 23 feet docked at the Kalele Kai marina. The foregoing evidence, viewed in the light most favorable to Yoshikawa, could support a defense of estoppel by acquiesence. See Hartmann v. Bertelmann, 39 Haw. 619, 625-27 (Haw. Terr. 1952).

In addition, when viewed in the light most favorable to Yoshikawa, his evidence could establish that he was an intended or incidental beneficiary of the Rosic Settlement Agreement. In February 2008, Rosic listed Apt. 106, his 69-foot boat mooring, and the Ariel for sale. The Association claimed it did not have authority under its governing documents to approve Rosic's disposal, modification, or reconfiguration of individual pier walkways to accommodate boats longer than 23 feet. Rosic disagreed. Rosic and the Association settled their dispute in

June 2009, executing the Rosic Settlement Agreement.  The Rosic Settlement Agreement provided:

> 5.   Mr. Rosic shall disclose to a buyer of his property that any subsequent owner must harbor a boat in the boat dock or else the Board may require the area to be reconfigured.  In addition to keeping the area configured as it is presently, such owner would have the same rights (twelve months plus a reasonable extension period) as other owners.

In November 2010, Rosic sold Apt. 106, his 69-foot boat mooring, and the Ariel to Yoshikawa, pursuant to his settlement with the Association.

As part of the settlement with Rosic, the Association passed and recorded the Tenth Amendment of its Declaration.  The Tenth Amendment expressly contemplates the sale of boat moorings in their modified condition, with the new owner having 12 months to dock a boat in the modified mooring.  The Tenth Amendment also included "Dock and Boat Rules" which were incorporated into the Kalele Kai House Rules.  The Dock and Boat Rules expressly allowed the sale of boat moorings in their modified conditions. An addendum to the Dock and Boat Rules dated August 27, 2009 states:

> D-5   If moorings are missing finger piers for any reason, they must be replaced prior to or at the time the boat mooring owner removes the existing boat and it is not replaced by a boat within twelve (12) months of the original boat's removal.  Prior to the expiration of this deadline, the owner may make a written request to the Board for a reasonable extension thereof.  The Board's decision in response to a request for extension shall be in writing and a timely request for an extension shall not be unreasonably denied by the Board.
>
> D-6   (a) When a modified boat mooring has one or more finger piers attached in a parallel orientation to the common walkway, upon sale of the modified boat mooring, the new owner will have up to twelve (12) months from the transfer date to dock a boat in the mooring.  Extensions of this deadline may be sought in accordance with the procedures set forth in Section D-5 above.
>
> (b) If the new owner chooses not to dock a boat in the mooring, the owner must reconfigure the mooring by returning all existing finger pier(s) into a perpendicular orientation to the common walkway.  Failure of the owner to return the moorings back to their original perpendicular orientation to the common walkway, the Association shall have the right to perform such reorientation at the owner's sole expense.

The minutes of a meeting of the Association's board of directors on August 25, 2011, state:

UNFINISHED BUSINESS:

1.  Boat Dock:

    . . . .

    c.  The board unanimously approved to grand-father the existing 4 boats which do not meet the 23' rule.  Should the owner sell his/her boat or home, the dock will need to go back to its original configuration at the expense of the owner.

By email dated November 21, 2012, the Association's attorney informed Yoshikawa's agent:

To the extent the Association's previous settlement with Mr. Rosic conveys legal rights and/or benefits to Mr. Yoshikawa, ***the Board will honor these as permitted by the project's governing documents***, however, the Board will not and cannot expressly approve the mooring of any boat at Kalele Kai in excess of 23 feet in length.

(Emphasis added.)

Yoshikawa's opposition to the Association's MSJ raised additional genuine issues of material fact about whether Yoshikawa was entitled to moor the ROLA at B28-B33 under a number of legal theories.  The circuit court therefore erred in granting the Association's MSJ.

**C.    The circuit court did not abuse its discretion when it denied Yoshikawa's HRCP Rule 56(f) motion.**

HRCP Rule 56 provides, in relevant part:

**(f) When affidavits are unavailable**.  Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Yoshikawa made an oral request for continuance pursuant to HRCP Rule 56(f) during the hearing on the Association's MSJ.

He failed to submit an affidavit or declaration stating the reasons he was not able to "present by affidavit facts essential to justify [his] opposition" to the Association's MSJ. Nor did he proffer such an explanation during the hearing.

Yoshikawa argued at the hearing, as he does on appeal, that because he had not yet filed his answer to the Association's amended complaint, the circuit court should continue the hearing to allow him to assert several affirmative defenses (which he recited during the hearing). The argument has no merit. "[A] plaintiff-movant is not required to disprove affirmative defenses asserted by a defendant in order to prevail on a motion for summary judgment." U.S. Bank Nat'l Ass'n v. Castro, 131 Hawaiʻi 28, 41, 313 P.3d 717, 730 (2013) (citation omitted).

We hold that the circuit court did not abuse its discretion by denying Yoshikawa's oral request to continue the hearing on the Association's MSJ.

**D.     Paragraphs C, D, and E of the
First Amended Final Judgment were
<u>not appealed, and are affirmed.</u>**

"[I]t is within our discretion to limit the issues to be decided on remand." Miyamoto v. Lum, 104 Hawaiʻi 1, 10, 84 P.3d 509, 518 (2004) (citations omitted). Yoshikawa's notice of appeal was taken from the First Amended Final Judgment. However, the statement of points on appeal in his opening brief did not mention the circuit court's Order Granting Motion to Dismiss Counterclaim and Cross-claim, Order Denying Leave to Amend, or any of the interlocutory orders awarding attorneys' fees and costs to the Association. Nor does his opening brief argue that the circuit court erred in granting the Association's motion to dismiss, denying his motion to amend, or awarding attorneys' fees or costs under any of the four interlocutory orders. Accordingly, paragraphs C, D, and E of the First Amended Final Judgment are affirmed. Yoshikawa's counterclaim and cross-claim, and the orders awarding attorneys' fees and costs to the Association, are not subject to litigation on remand. See

16

Costales v. Rosete, 133 Hawaiʻi 453, 468, 331 P.3d 431, 446 (2014) (limiting "the damages issues to be re-tried to those that are contested and that are 'sufficiently separate' from those damages issues that are not contested on appeal.").

### CONCLUSION

For the foregoing reasons, the "Findings of Fact, Conclusions of Law, and Order Granting Motion for Summary Judgment Filed 3/17/15 and Injunction Against Hitoshi Yoshikawa" entered on August 14, 2015, is vacated. The "First Amended Final Judgment" entered on November 9, 2016, is vacated in part: paragraphs A and B are vacated; paragraphs C, D, and E are affirmed. This matter is remanded to the circuit court for further proceedings consistent with this opinion.

DATED: Honolulu, Hawaiʻi, December 8, 2020.

On the briefs:

John D. Zalewski,                    /s/ Lisa M. Ginoza
Jana M. Naruse,                      Chief Judge
for Plaintiff-Appellee.

                                     /s/ Katherine G. Leonard
Terrance M. Revere,                  Associate Judge
Lauren C. McDowell,
for Defendant-Appellant.             /s/ Keith K. Hiraoka
                                     Associate Judge