**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-17-0000586**
**22-NOV-2021**
**07:51 AM**
**Dkt. 227 MO**

NO. CAAP-17-0000586

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

In the Matter of the Application of
NATALIE AU NISHIDA, as Personal Representative of
the Estate of Ronald Git Sum Au, Petitioner-Appellant, v.
3908 KAMOKU LLC, MARCELLA ROSEN, DAVID B. ROSEN,
Respondents-Appellees,

to register and confirm title to land situate at
Waikiki, City and County of Honolulu, State of Hawaii, and;

to modify or amend Royal Iolani Condominium Unit 3908
Document No. T-9187098 on Certificate of Title No. 1093274
and Royal Iolani Condominium Unit 3906 Document No. T-8876060
on Certificate of Title No. 1077015

APPEAL FROM THE LAND COURT OF THE STATE OF HAWAIʻI
(L.C. NO. 15-1-3758 (CASE NO. 1LD15-1-3758))

MEMORANDUM OPINION
(By: Ginoza, C.J., Wadsworth and Nakasone, JJ.)

Petitioner-Appellant Natalie Au Nishida (**Nishida**), as
Personal Representative of the Estate of Ronald Git Sum Au,
appeals from the July 18, 2017 Final Judgment (**Judgment**), entered
in the Land Court of the State of Hawaiʻi (**Land Court**).[1]
Pursuant to Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule
43(a), and this court's August 9, 2021 order, Nishida has been
substituted as the Petitioner-Appellant in place of Ronald Git
Sum Au (**Au**), who filed this appeal, as well as the opening and

---

[1] The Honorable Gary W. B. Chang presided.

reply briefs, and who has since died.

The Land Court entered judgment in favor of Respondents-Appellees 3908 Kamoku LLC (**Kamoku**) and David B. Rosen (**Rosen**) (collectively **Respondents**), dismissing with prejudice "[Au's] First Amended Petition to Expunge or Cancel Document No. T-9187098 on Certificate of Title No. 1093274, and Expunge Commissioner's Deed" (**Amended Petition**), filed on December 5, 2016.[2]  The Judgment was entered pursuant to a series of orders that, among other things, denied Au's motion for summary judgment and granted Kamoku's counter-motion for summary judgment, and Rosen's joinder therein, on the Amended Petition.  It appears the Land Court based its judgment dismissing the Amended Petition primarily on two grounds:  (1) that the claims asserted in the Amended Petition were previously adjudicated by the Circuit Court of the First Circuit (**Circuit Court**) in a prior foreclosure action, Wells Fargo Bank, N.A. v. Au et al., Civil No. 12-1-1567-06 (**Foreclosure Case**) and, therefore, the Amended Petition constituted an impermissible "collateral attack" on the prior orders and judgments (**Foreclosure Judgments**) entered in the Foreclosure Case; and (2) that the Land Court lacked subject matter jurisdiction over the tort and consumer protection claims set forth in the Amended Petition.

On appeal, Au contends[3] that the Land Court erred in entering judgment in favor of Respondents and in dismissing the Amended Petition with prejudice, on the ground, among others, that the Amended Petition constituted an impermissible collateral attack on the Foreclosure Judgments.  Au argues that:  (1) the claims set forth in the Amended Petition fall within recognized exceptions to the collateral-attack doctrine, because the Circuit

_____

[2]     With respect to Respondent-Appellee Marcella Rosen, Rosen's wife, the Judgment states:

>     Respondent MARCELLA ROSEN, who was named in the Petition, apparently was not served and did not appear herein. However, because the basis for the Amended Petition being dismissed would apply equally to her, this Final Judgment shall operate as a final adjudication of any claims asserted against her therein as well.

[3]     Although Nishida is now the Petitioner-Appellant, we refer to the contentions and arguments contained in Au's opening and reply briefs as Au's.

Court lacked personal jurisdiction over Kamoku, and fraud was committed in the Foreclosure Case; (2) the Land Court had "cogent reasons" to expunge or vacate the quitclaim deed that conveyed the foreclosed property to Kamoku; (3) the Land Court was required to determine that the foreclosed property was acquired at a "fair and equitable price"; and (4) the Circuit Court erred in entering a post-judgment order confirming the foreclosure sale.[4]

For the reasons discussed below, we affirm the Judgment.

## I. Background

### A. The Foreclosure Case

On June 4, 2012, Wells Fargo Bank, N.A. (**Wells Fargo**) filed a Complaint for Declaratory Relief and to Foreclose Mortgage (**Complaint**), initiating the Foreclosure Case. The Complaint sought foreclosure of a 2007 Mortgage that was executed by Au to secure a $475,700 loan, and was recorded with respect to real property located at 581 Kamoku Street #3908, Honolulu, Hawaiʻi 96826, *i.e.*, Unit 3908 of the Royal Iolani Condominium Project (**Unit 3908 or the Property**).

On March 3, 2014, the Circuit Court entered its "Findings of Fact and Conclusions of Law; Order Granting Plaintiff's Motion for Summary Judgment as to its Second Cause of Action for Judicial Foreclosure and for Interlocutory Decree of Foreclosure Filed December 6, 2013" (**Foreclosure Decree**).[5] The Foreclosure Decree found Au in default under the 2007 Mortgage and related promissory note, and concluded that Wells Fargo was entitled to the foreclosure of the 2007 Mortgage and the sale of the Property.

---

[4] Au's points of error have been reordered, restated, and condensed for clarity. Au's opening brief does not strictly comply with HRAP Rule 28(b) in numerous respects. Nevertheless, Hawaiʻi appellate courts have "consistently adhered to the policy of affording litigants the opportunity 'to have their cases heard on the merits, where possible.'" Marvin v. Pflueger, 127 Hawaiʻi 490, 496, 280 P.3d 88, 94 (2012) (quoting Morgan v. Plan. Dep't, Cty. of Kauai, 104 Hawaiʻi 173, 180-81, 86 P.3d 982, 989-90 (2004)).

[5] The Honorable Karl K. Sakamoto presided.

Au initially appealed from the Foreclosure Decree, but the appeal was dismissed with prejudice pursuant to stipulation.

On January 22, 2015, the Circuit Court entered its "Order Approving Commissioner's Report and Granting Plaintiff's Motion for Confirmation of Foreclosure Sale, Allowance of Costs, Commissions and Fees, Distribution of Proceeds, Directing Conveyance and for Writ of Possession/Ejectment, Filed October 22, 2014" (**Confirmation Order**).  The Confirmation Order approved the sale to Kamoku, ordered the Commissioner upon closing to convey the Property to Kamoku, and "forever barred and foreclosed" Au "of and from all right, title and interest and claims at law or in equity in and to the . . . Property and every part thereof and to the proceeds therefrom arising up to the date of closing or in equity in and to the Mortgaged Property and every part thereof and to the proceeds therefrom arising up to the date of closing."  The Confirmation Order was entered as a final judgment pursuant to Hawaiʻi Rules of Civil Procedure (**HRCP**) Rule 54(b).  Au did not appeal from the Confirmation Order.

The deed conveying the Property to Kamoku (**Commissioner's Deed**) was recorded in the Land Court on February 26, 2015 as Document No. T-9187098 on Transfer Certificate of Title No. 1093274.  The Commissioner's Deed conveyed Unit 3908, together with the "exclusive easement to use the Parking Stall(s), if any, as shown in said Declaration, as amended."

**B.  Land Court Petition**

On October 9, 2015, Au filed a petition (**Petition**) in the Land Court, initiating the case underlying this appeal.  The Petition sought to modify or amend the respective certificates of title for Units 3908 and 3906 of the Royal Iolani Condominium Project.  Prior to the foreclosure of Unit 3908, Au owned both units.  By the Petition, Au sought to divest Kamoku of the two parking stalls of record for Unit 3908, numbers 17 and 541, and attach one stall, number 21, which was appurtenant to the other

unit owned by Au.[6]  Additionally, Au requested that the court "conclude that Respondents 3908 Kamoku LLC, Marcella Rosen and David B. Rosen are not bonafide purchasers for value . . . ."[7] Au asserted six claims for relief:  (1) Intentional or Negligent Misrepresentation; (2) Wrongful Conversion; (3) Fraud and Concealment; (4) Bad Faith; (5) Tortious Interference of Prospective Financial Business Advantage; and (6) Unfair and Deceptive Practices under HRS § 480.

On March 17, 2016, Kamoku filed a motion for summary judgment on the Petition.  On April 8, 2016, Au filed "Petitioner's Motion for Temporary Restraining Order and/or Permanent Injunction, and Motion for Partial Summary Judgment." On June 22, 2016, the Land Court entered orders denying both Kamoku and Au's motions.

On July 5, 2016, Kamoku filed a motion for partial summary judgment as to Au's tort and consumer protection claims for lack of subject matter jurisdiction under HRS chapter 501. On August 11, 2016, Kamoku filed another motion for partial summary judgment, which sought judgment in Kamoku's favor and against Au on the other claims asserted in the Petition.  On August 15, 2016, Rosen joined in both of Kamoku's motions. Meanwhile, on August 3, 2016, Au filed his own motion for summary judgment.  The three motions were heard by the Land Court on August 29, 2016.

At the August 29, 2016 hearing, the Land Court orally denied Au's motion "on the grounds that the petition in the case at bar constitutes a collateral attack upon the foreclosure judgment that has already been filed."  The Land Court further ruled:

---

[6]     The Petition alleged that Au was in adverse possession of parking stall numbers 17 and 541, and that Au had exchanged stalls appurtenant to Units 3908 and 3906 in 1991.  It appears that later in the litigation Au acknowledged that the stalls had not been exchanged.

[7]     Rosen represented Wells Fargo in the Foreclosure Case.  Au alleged in the Petition that Rosen "never represented to Petitioner Au or to foreclosure Judge Sakamoto that the prevailing bidder Respondent 3908 Kamoku LLC was an entity prepared by . . . Rosen naming his wife Respondent Marcella Rosen and that the address of 3908 Kamoku LLC . . . was the law office address of . . . Rosen."

> [T]he Court will grant minimal relief on [Kamoku's August 11, 2016] motion for partial summary judgment only to the extent that the Court will recognize that the instant petition does constitute a collateral attack upon the foreclosure judgment.
>
> Beyond that, the Court will deny all other relief without prejudice, because this court does not believe it is appropriate for this court to adjudicate any of the issues, and thereby restrict Judge Sakamoto's ability to address, with complete freedom, all of the allegations of fraud or other impropriety that is alleged to be a basis to set aside or alter or amend the Court's prior judgment.

Additionally, the Land Court granted Kamoku's July 5, 2016 motion for partial summary judgment, concluding that the court lacked jurisdiction over the tort and consumer protection claims asserted in the Petition.[8/]

On October 28, 2016, Au moved to amend the Petition. The Land Court granted the request, but limited the amendment to "that single claim of fraud affecting the title to the subject property and whether or not title is properly sitting in the hands of a genuine and legitimate owner because of the alleged fraud." The court "determined that there is no basis to allow amendment of the petition with respect to the parking stall claim."

On December 5, 2016, Au filed the Amended Petition. The Amended Petition asked the Land Court to determine that the

---

[8/] On April 19, 2017, the court entered its written order granting in part and denying in part Kamoku's August 11, 2016 motion for partial summary judgment, which stated in relevant part:

> [T]he Court concludes the instant Petition is an impermissible collateral attack on the orders, decrees, and/or final judgment rendered in civ. no. 12-1-1567-06 (KKS), a judicial foreclosure action.
>
> Accordingly, this Court refrains from addressing the merits and dismisses the instant Petition with prejudice to the extent it constitutes a collateral attack, and dismisses the instant Petition without prejudice as to all remaining claims.

On the same date, the court entered its written order granting Kamoku's July 5, 2016 motion for partial summary judgment, which stated in relevant part:

> [T]he Court concludes that it lacks subject matter jurisdiction over the claims raised by the instant Petition which seek relief not arising under Hawaii Revised Statutes chapter 501-1, et seq.

Circuit Court "had no jurisdiction in rem or in personam over [Kamoku]," because Kamoku was not "incorporated" when it bid on the Property and the Circuit Court orally confirmed the sale,[9] and thus "[t]he Circuit Court Order authorizing the sale of Unit 3908 to [Kamoku] was void and unenforceable for lack of jurisdiction."  The Amended Petition also requested that the Land Court modify or amend the certificate of title for Unit 3908, and expunge and cancel the Commissioner's Deed.  Au asserted that the "recordation in the Land Court of the Commissioner's Deed was fraudulent, void[,] and unenforceable" due to alleged fraud and concealment by Rosen.  Au asserted the following "claims for relief": (1) "Jurisdiction of the Court and parties"; (2) "The First Circuit Court's lack of subject matter jurisdiction on November 18, 2014, and the self-dealing of Respondent David B. Rosen"; (3) "Intentional or Negligent Misrepresentation"; (4) "Fraud and Concealment"; (5) "Bad Faith"; (6) "Tortious Interference of Prospective Financial Business Advantage"; and (7) "Unfair and Deceptive Practices [Under] HRS [chapter] 480."

Also on December 5, 2016, Kamoku filed a "Post Judgment Motion to Enforce Judgment, Subsidiary Orders and Decrees, and Settlement Agreement and for Injunctive Relief" **(Post-Judgment Motion)** in the Foreclosure Case.[10]  On March 1, 2017, the Circuit Court entered an order granting the Post-Judgment Motion, except as to the requested injunction and fee award (**Post-Judgment Order**).  In particular, the Post-Judgment Order granted Kamoku's request that the court:

> (1) confirm that the sale of the Property to 3908 Kamoku LLC was properly conducted in all respects;
>
> (2) confirm that 3908 Kamoku LLC's being organized after the confirmation hearing did not, in any way, affect this Court's subject matter jurisdiction, mislead or defraud

---

[9]  The January 22, 2015 Confirmation Order indicates that Wells Fargo's motion for confirmation of foreclosure sale was heard on November 18, 2014.  At the hearing, "bidding on the . . . Property was re-opened for the public . . . [and Kamoku] submitted the winning bid in the amount of . . . $569,433.00[.]"  Au asserts that Kamoku did not file its articles of organization as a limited liability company (LLC) until December 17, 2014.  Kamoku does not dispute the date of its organization.

[10]  The Honorable Bert I. Ayabe presided.

7

> the court, or damage any party hereto;
>
> (3) declare 3908 Kamoku LLC to be the true and lawful owner of the Property, including all appurtenances thereto, pursuant to the orders and judgment entered in this case;
>
> (4) declare Mr. Au forever barred from asserting any rights in the Property, and all appurtenances thereto, pursuant to the orders and judgment entered in this case[.]

Au did not appeal from the Post-Judgment Order.

In the Land Court case underlying this appeal, on March 6, 2017, Au filed a motion "for summary judgment regarding collateral attack," which in substance sought summary judgment on the Amended Petition. Au argued, among other things, that his claims were not barred by the collateral-attack doctrine because the Circuit Court had lacked personal jurisdiction over Kamoku, and fraud was committed in the Foreclosure Case. On March 30, 2017, Kamoku filed a counter-motion for summary judgment on the Amended Petition. Kamoku argued that: (1) the Amended Petition constituted an impermissible collateral attack on the Foreclosure Case and contained claims that did not arise under HRS chapter 501; (2) Au was not a "party in interest" for the purpose of seeking to amend a Land Court certificate of title; and (3) Au lacked standing to amend title to the Property. The respective motions for summary judgment were heard on May 15, 2017, at which time the Land Court orally denied Au's motion and granted Kamoku's motion.

On July 18, 2017, the Land Court entered written orders: (1) denying Au's March 6, 2017 motion for summary judgment; (2) granting Kamoku's March 30, 2017 counter-motion for summary judgment; and (3) granting Rosen's April 3, 2017 joinder in Kamoku's counter-motion. On the same date, the Land Court entered the Judgment in favor of Kamoku and Rosen and against Au, dismissing with prejudice the Amended Petition as to all claims and all parties. This appeal followed.

## II.  Standards of Review

### A.  Summary Judgment

An appellate court reviews a trial court's grant or denial of summary judgment de novo using the same standard

applied by the trial court.  Nozawa v. Operating Engineers Local Union No. 3, 142 Hawaiʻi 331, 338, 418 P.3d 1187, 1194 (2018) (citing Adams v. CDM Media USA, Inc., 135 Hawaiʻi 1, 12, 346 P.3d 70, 81 (2015)).  "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Id. at 342, 418 P.3d at 1198 (quoting Adams, 135 Hawaiʻi at 12, 346 P.3d at 81) (brackets omitted).  "A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties."  Id. (quoting Adams, 135 Hawaiʻi at 12, 346 P.3d at 81).

The moving party has the burden to establish that summary judgment is proper.  Id. at 342, 418 P.3d at 1198 (citing French v. Haw. Pizza Hut, Inc., 105 Hawaiʻi 462, 470, 99 P.3d 1046, 1054 (2004)).  "Once a summary judgment movant has satisfied its initial burden of producing support for its claim that there is no genuine issue of material fact, the party opposing summary judgment must 'demonstrate specific facts, as opposed to general allegations, that present a genuine issue worthy of trial.'"  Id. (quoting Lales v. Wholesale Motors Co., 133 Hawaiʻi 332, 359, 328 P.3d 341, 368 (2014)) (brackets omitted).  "The evidence must be viewed in the light most favorable to the non-moving party."  Id. (quoting Adams, 135 Hawaiʻi at 12, 346 P.3d at 81) (brackets omitted).

**B.  Collateral Attack**

"The applicability of the collateral attack doctrine, which shares similarities with other preclusive doctrines such as collateral estoppel and res judicata, is a question of law which is reviewable de novo."  In re Thomas H. Gentry Revocable Tr., 138 Hawaiʻi 158, 168, 378 P.3d 874, 884 (2016) (citing Smallwood v. City and Cty. of Honolulu, 118 Hawaiʻi 139, 146, 185 P.3d 887, 894 (App. 2008)).

### III. Discussion

## A.  Collateral-Attack Doctrine

Au contends that the Land Court erred in entering judgment in favor of Respondents and in dismissing the Amended Petition with prejudice on the ground that the collateral-attack doctrine barred his claims.  Au argues that his claims were not barred by the collateral-attack doctrine because the Amended Petition alleged that the Circuit Court lacked personal jurisdiction over 3908 Kamoku and that fraud was committed in the Foreclosure Case.

"A collateral attack 'is an attempt to impeach a judgment or decree in a proceeding not instituted for the express purpose of annulling, correcting or modifying such judgment or decree.'"  In re Gentry Revocable Tr., 138 Hawaiʻi at 168–69, 378 P.3d at 884–85 (quoting Lingle v. Hawaiʻi Gov't Emps. Ass'n, AFSCME, Local 152, AFL–CIO, 107 Hawaiʻi 178, 186, 111 P.3d 587, 595 (2005)).  This court has explained:  "[T]he collateral attack doctrine is implicated when an independent suit seeks to impeach a judgment entered in a prior suit."  Smallwood, 118 Hawaiʻi at 150, 185 P.3d at 898.

> The party asserting that an action constitutes an impermissible collateral attack on a judgment must establish that: (1) a party in the present action seeks to avoid, defeat, evade, or deny the force and effect of the prior final judgment, order, or decree in some manner other than a direct post-judgment motion, writ, or appeal; (2) the present action has an independent purpose and contemplates some other relief or result than the prior adjudication; (3) there was a final judgment on the merits in the prior adjudication; and (4) the party against whom the collateral attack doctrine is raised was a party or is in privity with a party in the prior action.

Id.  Collateral attacks may be allowed under limited circumstances, such as when the prior court lacked subject matter jurisdiction or when fraud was committed in the prior proceeding.  Id.

Here, Au alleged in the Amended Petition that "[t]he Circuit Court Order authorizing the sale of Unit 3908 to 3908 Kamoku LLC was void and unenforceable for lack of jurisdiction."  Additionally, Au asserted that the Commissioner's Deed should be

expunged due to alleged fraud. Kamoku contends that "[t]his is a barred collateral attack because the Commissioner's Deed was executed pursuant to the Confirmation Order and to invalidate the Commissioner's Deed would necessarily require overturning the Confirmation Order (and, by implication, the Foreclosure [Judgments])." (Footnote omitted.)

As Kamoku maintains, and Au does not appear to dispute, the four prongs of the collateral attack doctrine were satisfied. "The first part of this test confirms that the collateral attack doctrine is implicated when an independent suit seeks to impeach a judgment entered in a prior suit." Smallwood, 118 Hawaiʻi at 150, 185 P.3d at 898. Here, both the Petition and the Amended Petition sought to impeach the Foreclosure Judgments, which extinguished Au's interest in the Property. Au's requested amendments to the Property's title would "avoid, defeat, evade, or deny the force and effect of" the Foreclosure Judgments. Id. "The second part [of the test] distinguishes the collateral attack doctrine, where a party is suing on a different claim for relief, from the doctrine of res judicata where a party is seeking a different result on the same claim or cause or action." Id. Here, both the Petition and the Amended Petition asserted different claims for relief than those resolved by the Foreclosure Judgments. The Foreclosure Case sought to foreclose a mortgage on the Property and then to confirm the foreclosure sale, while Au's Land Court petitions sought to invalidate the sale of the Property and/or expunge the Commissioner's Deed. Third, there must have been a final judgment on the merits in the prior adjudication. Id. Here, the Foreclosure Judgments (*i.e.*, the Foreclosure Decree and the Confirmation Order) constituted final judgments on the merits of the Foreclosure Case. See Bank of America, N.A. v. Reyes-Toledo, 139 Hawaiʻi 361, 372, 390 P.3d 1248, 1259 (2017) (a judgment entered on a decree of foreclosure is a final judgment under HRS § 641-1); HRS § 667-51(a) (Supp. 2013) (identifying orders in a foreclosure case that are final and appealable, including "[a] judgment entered on an order confirming the sale of the foreclosed property, if the circuit court expressly finds that no just reason for delay exists, and

11

certifies the judgment as final pursuant to [HRCP] [R]ule 54(b)"). Lastly, "under appropriate circumstances, persons who were not parties to the prior adjudication may raise the collateral attack doctrine against a party who is properly bound by the prior judgment." Smallwood, 118 Hawaiʻi at 150, 185 P.3d at 898. Here, "the party against whom the collateral attack doctrine is raised," Au, was a defendant in the Foreclosure Case and was bound by the Foreclosure Judgments. Thus, barring an applicable exception, the collateral-attack doctrine was properly applied to Au's claims in this case.

## 1. Circuit Court's Subject Matter Jurisdiction

This court has recognized an exception to the collateral-attack doctrine when the prior court lacked subject matter jurisdiction. Id. Here, the Amended Petition stated, in relevant part:

> Petitioner's First Amended Petition requests the Land Court of the State of Hawaii to determine that the Circuit Court of the First Circuit on November 18, 2014 had no jurisdiction in rem or in personam over 3908 Kamoku LLC, which was not incorporated under HRS 428-202 until it was filed with the State of Hawaii DCCA on December 17, 2014. The Circuit Court Order authorizing the sale of Unit 3908 to 3908 Kamoku LLC was void and unenforceable for lack of jurisdiction.

Au's allegation ignores the distinction between personal jurisdiction and subject matter jurisdiction. Au appears to argue that the Circuit Court lacked subject matter jurisdiction to confirm the foreclosure sale of the Property because Kamoku was not yet organized as an LLC when it bid on the Property and the Circuit Court orally confirmed the sale.

"[B]y statute, the state legislature has vested the circuit courts with general jurisdiction over 'civil actions and proceedings,' and specific jurisdiction over mortgage foreclosure actions." First Hawaiian Bank v. Timothy, 96 Hawaiʻi 348, 356, 31 P.3d 205, 213 (App. 2001) (original brackets and citation omitted); see HRS § 603-21.5(a)(3) (Supp. 2013) (civil actions and proceedings); HRS chapter 667, part IA (1993 & Supp. 2013) (judicial foreclosure actions). In addition, we have recognized

12

that:

> [a] successful bidder at a judicial sale becomes a so-called quasi party to the proceedings, by virtue of the bid, even though originally not a party to the action or proceeding in which the sale was ordered, for some purposes, including the right to urge or to oppose confirmation.  Purchasers subject themselves to the jurisdiction of the court in the original suit as to all matters connected with the sale and therefore have the right to interfere in the proceedings for their own benefit and protection and to claim equitable relief.  They become subject to the future orders of the court, and are bound as parties by the decree of the court confirming or setting aside the sale.  They can be compelled by summary processes of the court, so long as the court's control over the cause and the parties continues, to perform their agreement specifically and comply with the terms of the purchase, by payment or otherwise.

Timothy, 96 Hawaiʻi at 357, 31 P.3d at 214 (citation omitted).

Here, the Circuit Court had subject matter jurisdiction over the Foreclosure Case and personal jurisdiction over the successful bidder at the foreclosure sale.  Au has provided no authority supporting the premise that a circuit court, after entering a foreclosure decree, loses subject matter jurisdiction to confirm sale and enter judgment, because the successful bidder had not yet filed its organizational paperwork at the time of its bid.  We have found none.  Au has similarly provided no authority for his position that a purported lack of personal jurisdiction over the successful bidder at a foreclosure sale strips the circuit court of its subject matter jurisdiction over the underlying foreclosure action.  We have found none.  Rather, as "a general rule, a collateral attack may not be made upon a judgment or order rendered by a court of competent jurisdiction.  If it is only a question of error or irregularity and not of jurisdiction, it cannot be raised on collateral attack." Matsuura v. E.I. du Pont de Nemours & Co., 102 Hawaiʻi 149, 158-59, 73 P.3d 687, 696-97 (2003) (quoting First Hawaiian Bank v. Weeks, 70 Haw. 392, 398, 772 P.2d 1187, 1191 (1989)); see Aames Funding Corp. v. Mores, 107 Hawaiʻi 95, 104 n.10, 110 P.3d 1042, 1051 n.10 (2005) (declining to address the contention that the court lacked subject matter jurisdiction in a foreclosure case where the defendants failed to provide any discernable legal argument supporting their contention); First Hawaiian Bank, 70

Haw. at 398, 772 P.2d at 1191 ("The appellants maintain the question here is one of jurisdiction since they question the authority of the supreme court justice who presided over the probate proceedings in 1863 to approve and order a distribution not in accord with the testator's intent.  But we are convinced the issue they raise is one 'of error or irregularity and not of jurisdiction,' for there is no doubt that the justice was vested with power to determine matters involved in the settlement and distribution of William Johnson's estate.").

Accordingly, Au has failed to present a discernible legal argument that his collateral attack on the Foreclosure Judgments was based on the Circuit Court's lack of subject matter jurisdiction.  He thus failed to establish an exception to the collateral attack doctrine on this ground.

### 2.  Fraud

This court has recognized that a collateral attack on a prior judgment may be allowed when the party attacking the prior judgment shows that it was procured by fraud.  Smallwood, 118 Hawaiʻi at 154, 185 P.3d at 902; see Matsuura, 102 Hawaiʻi at 159, 73 P.3d at 697; HRCP Rule 60(b) ("This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court.")  Here, Au contends that Rosen concealed his "self-interest to purchase unit 3908" and made misrepresentations to Au by "rejecting Au's offer to repurchase unit 3908 by bringing all interest current and continuing the Wells Fargo Bank N.A. mortgage."  Au further argues that at the November 18, 2014 hearing, Rosen misrepresented to the Circuit Court that Kamoku was the successful bidder in the foreclosure sale of Unit 3908, when Kamoku was not "incorporated" until December 17, 2014.

In Hawaiʻi, there are three types of fraud recognized in the mortgage or conveyance context:  "(1) fraud in the factum, (2) fraud in the inducement, and (3) constructive fraud." Hancock v. Kulana Partners, LLC, 145 Hawaiʻi 374, 382, 452 P.3d 371, 379 (2019) (conveyance context); Aames Funding Corp., 107

Hawaiʻi at 103, 110 P.3d at 1050 (mortgage context).

> First, fraud in the factum "is fraud which goe to the nature
> of the document itself." [107 Hawaiʻi at 103, 110 P.3d at
> 1050.] . . . Second, fraud in the inducement is "fraud
> which induces the transaction by misrepresentation of
> motivating factors." [Id.] at 103-04, 110 P.3d at 1050-51.
> Third, constructive fraud is "characterized by the breach of
> fiduciary or confidential relationship." [Id.] at 104, 110
> P.3d at 1051.

Hancock, 145 Hawaiʻi at 382, 452 P.3d at 379.

Au does not provide a discernible factual or legal argument in support of his position that fraud was committed in the Foreclosure Case. As to Au's contention that Rosen made misrepresentations in rejecting Au's offer to repurchase unit 3908, Au asserts that "Caldwell Banker received an offer for $600,000.00 and Respondent Rosen advised the Court and Au that the current deficiency exceeded $700,000.00 and was unacceptable." Au fails to provide any citation to the record supporting his assertions. He cites to appendices attached to his opening brief, but "[t]his court disregards appendices that are not part of the record, unless otherwise specified by the rule." Durda v. Ion Genius, Inc., No. CAAP-13-0000420, 2017 WL 621277, at *3 n.4 (Haw. App. Feb. 15, 2017) (mem.) (citing HRAP Rule 28(b)(10)).

Even if there were evidence to support Au's factual allegations, Au has failed to present a discernable argument as to how Rosen's alleged statement constituted fraud. For example, Au does not identify a false representation of material fact made with knowledge of falsity and "in contemplation of [Au's] reliance upon th[is] false representation[]." Shoppe v. Gucci Am., Inc., 94 Hawaiʻi 368, 386, 14 P.3d 1049, 1067 (2000) ("[E]ven taking all of Plaintiff's factual allegations as true, Plaintiff has failed to establish that Defendants made a false representation with respect to a material fact."). Nor does Au explain how he relied on or was harmed by any false representation allegedly made by Rosen. See id.; see also Aames Funding Corp., 107 Hawaiʻi at 104, 110 P.3d at 1051 (concluding that the defendants did not "provide a discernible factual or legal argument in support of their position that the case at bar

involves any one of the three types of fraud mentioned" (citing HRAP Rule 28(b)(7))).

Au also contends that "the ultimate fraud and concealment of Respondent Rosen was the concealment from the Foreclosure Court, Commissioner and Petitioner Au" that Kamoku was not "incorporated" when it was declared the successful bidder at the November 18, 2014 hearing. Relatedly, Au argues that Rosen "never disclosed to the Foreclosure Court or Petitioner Au that he represented [Kamoku], which was not in existence until almost 30 days later on December 17, 2014 . . . ."

Again, Au fails to provide a discernible factual or legal argument in support of his position that Rosen committed fraud in the Foreclosure Case. See Aames Funding Corp., 107 Hawaiʻi at 104, 110 P.3d at 1051; Shoppe, 94 Hawaiʻi at 386, 14 P.3d at 1067. There is no dispute that: (1) Kamoku was organized on December 17, 2014; (2) the Confirmation Order was entered on January 22, 2015; and (3) the Commissioner's Deed conveying the Property to Kamoku was executed on February 24, 2015, and recorded on February 26, 2015. Under these circumstances, where Kamoku was formed prior to accepting delivery of the Commissioner's Deed, Au failed to raise a genuine issue of material fact that the conveyance of the Property to Kamoku was fraudulent. See R.W. Meyer, Ltd. v. McGuire, 36 Haw. 672, 673-74 (Haw. Terr. 1944) ("The time of acceptance of delivery being the criterion of every deed's final and complete execution, a grant *in futuro,* where no immediate delivery, acceptance and conveyance are intended to a proposed and potentially existent corporation named as grantee, becomes a valid conveyance *eo instanti* upon the acceptance of delivery by the grantee, which has in the meantime qualified as a duly organized and corporate entity fully authorized by its articles of incorporation to hold land and accept deeds to it." (citation omitted)); cf. HRS § 414-34 (2004) ("All persons purporting to act as or on behalf of a corporation, knowing there was no incorporation under this chapter, are jointly and severally liable for all liabilities created while so acting.").

16

Additionally, to the extent Au contends that the alleged non-disclosure constitutes fraud on the court, his argument is without merit. The Hawaiʻi Supreme Court has explained, "since the remedy for fraud on the court is far reaching, it only applies to very unusual cases involving 'far more than an injury to a single litigant,' but rather, a 'corruption of the judicial process itself.'" Cvitanovich-Dubie v. Dubie, 125 Hawaiʻi 128, 144-45, 254 P.3d 439, 455-56 (2011) (brackets omitted) (quoting Schefke v. Reliable Collection Agency, Ltd., 96 Hawaiʻi 408, 431 n. 42, 32 P.3d 52, 75 n. 42 (2001)). "It is generally accepted that fraudulent conduct such as perjury or non-disclosure by a party, standing alone, is insufficient to make out a claim for fraud on the court." Id. (citing Gleason v. Jandrucko, 860 F.2d 556, 559-60 (2d Cir.1988); Lockwood v. Bowles, 46 F.R.D. 625, 632-34 (D.D.C. 1969); 12 James Wm. Moore et al., Moore's Federal Practice ¶ 60.21 [4][c] (3d ed. 2010)).

Here, Au did not raise a genuine issue of material fact that the alleged non-disclosure resulted in the corruption of the judicial process. Thus, he has not set forth a factual or legal basis for any fraud on the court.

Accordingly, Au has failed to present a discernible factual or legal argument that his collateral attack on the Foreclosure Judgments was based on fraud committed in the Foreclosure Case. He thus failed to establish an exception to the collateral attack doctrine on this ground.

## B. Law of the Case Doctrine

Au contends that "the Land Court for 'cogent reason[s]' has the authority to expunge the documents recorded in the Land Court resulting from the fraud and misrepresentation of Rosen." (Capitalization altered.) Au cites Wong v. City & Cty. of Honolulu, 66 Haw. 389, 396, 665 P.2d 157, 162 (1983), for the proposition that the law of the case doctrine does not prevent a second court from modifying the prior ruling of another court of equal and concurrent jurisdiction, where "cogent reasons" support the second court's action.

17

"A fundamental precept of common-law adjudication is that an issue once determined by a competent court is conclusive." PennyMac Corp. v. Godinez, 148 Hawaiʻi 323, 331, 474 P.3d 264, 272 (2020) (brackets omitted) (quoting Arizona v. California, 460 U.S. 605, 619 (1983)). "This 'general principle of finality and repose' is embodied in the law of the case doctrine, which provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" Id. (brackets omitted) (emphasis added) (quoting Arizona, 460 U.S. at 618).

Here, Au brought a new case in the Land Court and sought to impeach the Circuit Court's judgments in a different case, i.e., the Foreclosure Case. The law of the case doctrine and any exception based on "cogent reasons" simply does not apply. For the reasons previously stated, the Land Court did not err in concluding that the collateral-attack doctrine barred Au's claims.

## C. Fair Price

Au contends that "[t]he Land Court has been provided no evidence by [Kamoku] or Rosen that the sale of the property below the claimed deficiency by Wells Fargo N.A., was a sale that was conducted fairly and diligently to obtain the best price for unit 3908." In support of his argument, Au cites the supreme court's decision in Kondaur Capital Corp. v. Matsuyoshi, 136 Hawaiʻi 227, 361 P.3d 454 (2015).

Au's argument is part of his collateral attack on the Foreclosure Judgments – in particular, the Confirmation Order, from which he did not appeal. For the reasons previously discussed, the Land Court did not err in concluding that the collateral-attack doctrine barred Au's claims.[11]

---

[11] We also note that, to the extent Au's argument could be viewed as a defense that could have been raised in the Foreclosure Case, it would be barred under the res judicata/claim preclusion doctrine. See Mortg. Elec. Registration Sys., Inc. v. Wise, 130 Hawaiʻi 11, 18, 304 P.3d 1192, 1199 (2013).

**D. The Circuit Court's Post-Judgment Order**

Au contends that the Circuit Court lacked jurisdiction to entertain the Post-Judgment Motion filed by Kamoku and Rosen. Because Au did not appeal from the Post-Judgment Order, it is not within the scope of this appeal. Accordingly, we lack jurisdiction to consider the merits of Au's argument regarding the Post-Judgment Order.

## IV. Conclusion

For the reasons discussed above, we affirm the Final Judgment, entered on July 18, 2017, in the Land Court of the State of Hawaiʻi.

DATED: Honolulu, Hawaiʻi, November 22, 2021.

On the briefs:

Ronald G.S. Au,
Petitioner-Appellant, Pro Se

/s/ Lisa M. Ginoza
Chief Judge

Wayne Nasser and
Benjamin M. Creps
(Ashford & Wriston, LLLP)
for Respondent-Appellee
3908 Kamoku LLC

/s/ Clyde J. Wadsworth
Associate Judge

David B. Rosen
(Law Office of David B. Rosen)
Pro Se Respondent-Appellee

/s/ Karen T. Nakasone
Associate Judge